

**FILED**

Aug 10 2017, 8:28 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANTS

Theo Ciccarelli Cornetta
Jon Laramore
Indiana Legal Services, Inc.
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In re the Name Change of A.L. and In re the Name Change of L.S. | August 10, 2017 |
| | Court of Appeals Case No. 79A02-1703-MI-473 |
| | Appeal from the Tippecanoe Circuit Court |
| | The Honorable Thomas H. Busch, Judge |
| | The Honorable Daniel J. Moore, Magistrate |
| | Trial Court Cause Nos. 79C01-1609-MI-179 79C01-1605-MI-102 |

**Baker, Judge.**

[1] A.L. and L.S. are transgender men, who each filed a petition to change their legal gender marker. Additionally, L.S. filed petitions to change his name, to waive the publication requirement, and to seal the record pursuant to Administrative Rule 9. The trial court found that publication is required for changes of gender marker and name, and denied L.S.'s request to seal the record pursuant to Administrative Rule 9. The matters have been consolidated for this appeal; L.S.'s appeal is interlocutory.

[2] We find as follows: (1) there is no statutory requirement to publish notice of intent to change one's gender marker; (2) there is a statutory requirement to publish notice of intent to change one's name, but that statute is explicitly subject to Administrative Rule 9; and (3) in this case, L.S. made the requisite showing under Administrative Rule 9, is entitled to have the record sealed, and is entitled to waive publication of notice of intent to change his name.

[3] Consequently, our judgment is as follows: (1) the judgment of the trial court is reversed with respect to the respective petitions to change gender markers, and we remand both causes with instructions to enter orders granting those petitions and directing the Indiana State Department of Health to amend both birth certificates to reflect their male gender; (2) the judgment of the trial court is reversed with respect to its denial of L.S.'s requests to waive publication and to seal the record pursuant to Administrative Rule 9; and (3) the matter is remanded for consideration of L.S.'s petition to change his name.

# Facts

A.L. and L.S. are transgender men.[1] Both men are currently working with counselors and medical professionals in their transition from female to male. A.L. has been living as a man for two years and has had medical procedures in line with his transition. L.S. has been living as a man for most of his life. He has been doing so full-time, in both his social and professional life, for approximately four years.

## *A.L.*

On May 11, 2016, A.L. filed a pro se petition for a name change. He published his intent to change his name in a newspaper and, on July 13, 2016, the trial court granted the petition. At that same hearing, A.L. requested to have his gender marker changed on his birth certificate.[2] The trial court directed A.L. to publish his intent to change his gender marker with a newspaper and set the matter for another hearing. A.L. subsequently obtained counsel. On August 23, 2016, A.L. filed a motion to correct error, asserting that the trial court's requirement that he publish notice of his intent to change his gender marker was contrary to Indiana law.

---

[1] A person who is "transgender" is "a person whose gender identity differs from the sex the person had or was identified as having at birth[.]" *Merriam-Webster Dictionary*, at https://www.merriam-webster.com/dictionary/transgender (last visited July 17, 2017).

[2] His initial request was oral and he filed a written petition to that effect before leaving the courthouse that same day.

At an October 26, 2016, hearing, A.L. testified as to the good faith of his petition for change of gender marker and presented evidence of his medical transition. The trial court took the matter under advisement, later denying the petition because A.L. had not published his intent to change his gender marker with a newspaper. Following further litigation, on December 9, 2016, the trial court again denied A.L.'s request to avoid publication and ordered A.L. to provide proof of publication before the trial court would issue an order changing his gender marker. In relevant part, the trial court held as follows:

> 9. The Court specifically finds that Petitioner's requested gender change is being made in good faith without any fraudulent intent. . . .
>
> 10. The legislature [h]as provided no direct authority to the courts to specifically address gender marker changes and the Court of Appeals has provided only limited guidance thus far.
>
> ***
>
> 12. Petitioner's request to proceed without published notice is based primarily on arguments that transgender[] individuals are disproportionately subjected to violence based on their status as transgender[] individuals. The Petitioner has made no showing that the Petitioner is personally at increased risk for violence (other than as a general member of the transgender[] community) or that this Petition would lead to an increased risk of violence for the Petitioner.
>
> ***

18.   The Petitioner's arguments on this issue favor a general rule that would require no notice for any individual seeking to change their legal gender and have their birth certificate amended.  Without notice the potential for fraud greatly increases in that individuals might be able to seek multiple gender changes in attempts to avoid identification by creditors, governmental actors, or other aggrieved parties without those parties having an opportunity to object or even be aware of said changes. . . . [T]o proceed without notice would prevent the public interests from being voiced or addressed in the only forum currently addressing said issues as members of the public would be generally unaware, if even the[y] wished to be, that such decisions are occurring.

19.   The court is understandably reluctant to force well-meaning and potentially vulnerable individuals to address intimate and personal issues central to their personal identity in the harsh public light of open court.  However, such is the burden of a multitude of citizens who seek or are subjected to court intervention in the most personal areas of their lives.  The judicial preference for open, transparent, and public court proceedings is well established in American jurisprudence.  Similarly the importance of appropriate notice to potentially interested parties before legal redress is an essential element of our notice pleading practice.  The facts of this instant case, however sympathetic, are not sufficient to justify a departure from those essential and long standing principles of the Indiana Court system.

Appellants' App. Vol. II p. 13-15.  The trial court held that petitions for change of gender marker should follow the same procedural rubric as petitions for change of name.  A.L. now appeals.

## *L.S.*

On September 7, 2016, L.S. filed a petition for change of name and gender, a request for waiver of publication, a request for sealing of the record, a notice of exclusion of confidential information pursuant to Indiana Administrative Rule 9(G)(5), and a memorandum in support of these requests. The trial court held a hearing on the Administrative Rule 9 request on November 9, 2016. On December 9, 2016, the trial court denied L.S.'s motion to proceed under Administrative Rule 9 and ordered L.S. to publish his intent to change his name and gender marker in a newspaper. With respect to L.S.'s request to waive publication of his intent to change his gender marker, the trial court repeated much of its analysis set forth above in A.L.'s case, including another explicit finding that L.S. was acting in good faith without an intent to defraud. With respect to L.S.'s request to waive publication of his intent to change his name and invocation of Administrative Rule 9, the trial court found as follows:

> 8.  . . . Petitioner further requests relief from the statutory requirement to publish notice of Petitioner's name change specifically because it occurs in the context of a gender change. The court finds no statutory authority to proceed with a name change absent published notice and as will be addressed in the context of Petitioner's Administrative [Rule] 9 request, the court does not find the specific facts of this case would allow a name change absent publication.

> 9.  Petitioner further seeks protection of Petitioner's personal identifying information pursuant to Administrative Rule 9. Specifically Petitioner seeks sealing of these records under 9G(4) arguing that public access to these records will

create a significant risk of substantial harm to the requestor. The gravamen of the Petitioner's request is based on the demonstrable violence and harassment suffered by the transgender[] community as a whole. This issue cannot be simply overlooked. It is certainly true that the transgender[] community is disproportionately targeted for violence as a result of their transgender[] status. The court does not doubt that Petitioner's fear is very real and the court has tremendous sympathy for the difficult choices faced by individuals who confront gender dysphoria. However, similar to the request to proceed without publication, Petitioner's request, on these facts, would amount to a categorical ruling that in all instances for requested name change and gender marker change, transgender[] individuals would be entitled to proceed anonymously pursuant to the protections of Administrative Rule 9. The court declines to make such a categorical finding. Specifically, the court notes that Petitioner has made no showing that this Petitioner has been subject to any specific threats or violence as a result of Petitioner's transgender[] status. Further, and more to the point, Petitioner has made no showing that proceeding publicly with his petition would subject Petitioner to any increased risk of violence or harassment than that currently faced by Petitioner as a member of the transgender[] community. Moreover, there has been no evidence submitted that establishes that the public filing of such court cases has resulted in targeted violence against transgender[] individuals. The protections of Administrative Rule 9 represent a deviation from the courts['] longstanding preference for public and transparent proceedings. As such, that deviation must be justified by a significant factual showing. In the instant case, the Petitioner has not met that burden.

*Id.* at 18. The trial court did not rule on L.S.'s petition to change his name. L.S. now brings this interlocutory appeal. For the purpose of this appeal, A.L.'s and L.S.'s cases have been consolidated.

# Discussion and Decision

This appeal presents us with three issues to consider: (1) are transgender individuals who intend to seek a gender marker change required to provide notice by publication of that intention; (2) are transgender individuals who intend to seek a name change required to provide notice by publication of that intention; and (3) did the trial court err by finding that L.S. did not meet the burden of showing entitlement to relief under Administrative Rule 9?

The first two issues are matters of law, to which we apply a de novo standard of review. *E.g.*, *Town of Zionsville v. Town of Whitestown*, 49 N.E.3d 91, 94 (Ind. 2016). As to the third issue, to the extent that our review requires us to construe the language of Administrative Rule 9, we will again apply a de novo standard of review. *Angelopoulos v. Angelopoulos*, 76 N.E.3d 852, para. 13 (Ind. Ct. App. 2017). To the extent that our review requires us to review the trial court's factual determinations, we will apply a clearly erroneous standard. *Id.*

# I. Publication

Here, the trial court found that both A.L. and L.S. are required to publish notice of their intent to change their gender marker and that L.S. is required to publish notice of his intent to change his name.

# A. Gender Marker

[11]    Authority for trial courts to issue orders requiring that the Indiana State Department of Health (ISDH) change an individual's gender marker on his birth certificate stems from a decision of this Court. *In re Pet'n for Change of Birth Certificate*, 22 N.E.3d 707 (Ind. Ct. App. 2014). In *Birth Certificate*, the trial court had denied the petition of a transgender man to change his gender marker, finding that it had no authority to grant the request. In considering the issue, we examined Indiana Code section 16-37-2-10(b), which provides that the ISDH "may make additions to or corrections in a certificate of birth on receipt of adequate documentary evidence . . . ." This Court reasoned as follows:

> Like name changes, the ISDH defers to the courts by requiring a court order to establish adequate documentary evidence for an amendment of gender on a birth certificate. Courts in our state have entered such orders. Further, the Indiana Bureau of Motor Vehicles expressly recognizes "certified amended birth certificate[s] showing a change in . . . gender" as proof of identity to obtain, renew, or amend an Indiana driver's license or identification card. *See* 140 Ind. Admin. Code 7-1.1-3(b)(1)(B) and (K).

> Though never addressed by this court, the amendment of a birth certificate with respect to gender is not novel. The vast majority of states, including Indiana, have allowed it in practice for some time.

> I.C. § 16-37-2-10 provides general authority for the amendment of birth certificates, without any express limitation (in the statute or elsewhere) regarding gender amendments. In light of this statute, as well as the inherent equity power of a court of general

> jurisdiction, we conclude that the trial court had authority to grant the petition at hand.

*Id.* at 708-09 (internal footnotes and citations omitted). We noted the absence of legislative guidance regarding what evidence is required in support of a petition for a gender marker change, ultimately holding that "[w]ithout such guidance . . . it is our view that the ultimate focus should be on whether the petition is made in good faith and not for a fraudulent or unlawful purpose." *Id.* at 710.

[12] The relevant statutes have not been substantively amended since *Birth Certificate* was decided. There is no statute or rule requiring that an individual seeking a gender marker change publish notice of that intent. In this case, the trial court likened gender marker changes to name changes, but the statutory requirement for publication in name change cases does not apply to gender marker changes. It was erroneous to create a requirement where none exists.

[13] Unless and until the General Assembly crafts specific requirements regarding gender marker changes, this Court's common sense standard in *Birth Certificate* is the bar that must be met. Thus, a gender marker change petitioner needs to establish that the petition is made in good faith and not for a fraudulent or unlawful purpose. If a trial court determines that the petitioner has met that standard, no further requirements need to be met and the petition should be granted. Here, the trial court found that both A.L. and L.S. sought a gender marker change in good faith and with no intent to defraud. Appellants' App. Vol. II p. 13, 16. As such, the trial court should have granted their petitions for

gender marker change. We reverse on this issue and remand with instructions to grant both petitions and issue orders directing the ISDH to amend both birth certificates to reflect their male gender.

## B. Name Change

L.S. argues that the trial court erroneously ordered that he publish notice of his intent to change his name. As a general rule, upon filing a petition for a name change, a petitioner must, in relevant part, give notice of the petition by three weekly publications in a newspaper of general circulation published in the county where the petition was filed. Ind. Code § 34-28-2-3(a). Except for Administrative Rule 9, to which we turn next, there is no exception to this general publication requirement. Consequently, unless Administrative Rule 9 applies, a transgender individual seeking a name change must publish the petition just as any other individual seeking a name change.

## II. Administrative Rule 9

A petition to change one's name under Indiana Code chapter 34-28-2 is, however, explicitly "subject to Indiana Rules of Court Administrative Rule 9." I.C. § 34-28-2-2.5(b). We must determine, therefore, whether L.S. is entitled to relief under Administrative Rule 9.

Administrative Rule 9 "governs public access to, and confidentiality of, Court Records." Ind. Administrative Rule 9(A). The rule seeks to balance, among other things, the risk of injury to individuals with the promotion of accessibility to court records as well as governmental transparency. *Id.* The Commentary

notes that the rule "attempts to balance competing interests and recognizes that unrestricted access to certain information in Court Records could result in an unwarranted invasion of personal privacy or unduly increase the risk of injury to individuals and businesses." *Id.* cmt.

[17] As a general rule, all court records are publicly accessible. Admin. R. 9(D)(1). There is, however, a list of exceptions to that general rule, which are found in Rule 9(G). Relevant to this appeal is an exception providing that a court record that would otherwise be publicly accessible may be excluded from public access upon a verified written request demonstrating that "[a]ccess or dissemination of the Court Record will create a significant risk of substantial harm to the requestor . . . ." Admin. R. 9(G)(4)(a)(ii).

[18] In this case, L.S. presented the following evidence:

- Transgender individuals are disproportionately subject to violence and homicide. Appellants' App. Vol. II p. 71.
- LGBT people are more likely than any other minority group to experience hate crimes in the United States. *Id.*
- In 2016, twenty-six transgender individuals were murdered in the United States. *Id.*
- A survey of transgender people in Indiana revealed that 74% of respondents experienced harassment or mistreatment on the job; 73% reported harassment in their elementary, middle, and high schools; and 27% reported physical assault.
- L.S. is "aware of the high rates of violence against transgender people in Indiana and nationwide" and fears that he "will experience threats and actual violence if the record of [his] Change of Name and Gender is public." *Id.* at 52.

- L.S. has personally "witnessed a person, friend of mine, male to female transgender individual, a person get out of the car and come and grab her by her hair and shoved her face into the sidewalk, and uh, you know, hitting her. I mean blood . . . ." Tr. p. 36.
- L.S. has experienced discrimination because of his transgender identity, testifying that he lost an internship opportunity because the interviewer discovered that the way in which L.S. was identified by Social Security did not "match" with how he appeared. *Id.* at 34.
- L.S. testified that he believes that if information about his transgender status became public, he would be "at great risk for potential harm. . . . I mean it could be anything. I – I – I uh, violence, death, you know, it just depends on who – who gets a hold of me you know." *Id.* at 35-36.

The trial court found, based on this evidence, that the transgender community is "disproportionately targeted for violence" as a result of gender identity. Appellants' App. Vol. II p. 18. The trial court acknowledged "the demonstrable violence and harassment suffered by the transgender[] community as a whole." *Id.* It also found, however, that L.S. did not establish that he had been subject to specific threats or violence; that publishing his petition would subject him to an increased risk of violence or harassment that exceeds what he already faces as a member of the transgender community; or that the public filing of such court cases has resulted in targeted violence against transgender individuals. *Id.*

[19] Initially, we return to the language of Administrative Rule 9(G)(4), which requires that L.S. establish that publication of notice of his petition would create "a significant risk of substantial harm" to him. Publication must occur multiple times in a newspaper of general circulation; among other things, it would reveal

L.S.'s birth name and new desired name. I.C. § 34-28-2-3(b). Thus, to publish this notice would be to "out" L.S. as a transgender man to the general public.

[20] L.S. provided evidence that, as an out member of the transgender community, he would face a significantly higher risk of violence, harassment, and homicide. He has personally witnessed a transgender friend being violently assaulted because of her gender identity. He has personally experienced discrimination in the workplace after a discrepancy between the way he looked and the way he was identified by Social Security outed him as a transgender individual. Publication of his birth name and new name would enable members of the general public to seek him out, placing him at a significant risk of harm. And in today's day and age, information that is published in a newspaper is likely to be published on the Internet, where it will remain in perpetuity, leaving L.S. at risk for the rest of his life. There was no evidence in opposition to L.S.'s evidence.

[21] Under these circumstances, we find that L.S. established that publication of notice of his petition for a name change would create a significant risk of substantial harm to him. As a result, the trial court should have granted his requests to seal the record and waive publication pursuant to Administrative Rule 9. We remand with instructions to ensure that the record of this case remains sealed, and for consideration of L.S.'s petition for a name change.

[22]    The judgment of the trial court is reversed in part and remanded with instructions and for consideration of L.S.'s petition for a name change.

Bailey, J., and Altice, J., concur.