

FILED

Mar 12 2020, 8:54 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael R. Limrick
Hoover Hull Turner, LLP
Indianapolis, Indiana

Kathleen Cullum
Indiana Legal Services, Inc.
Indianapolis, Indiana

Megan Stuart
Indiana Legal Services, Inc.
Bloomington, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Name and Gender Change of R.E., <br><br> *Appellant-Petitioner.* | March 12, 2020 <br><br> Court of Appeals Case No. 19A-MI-2562 <br><br> Appeal from the Newton Circuit Court <br><br> The Honorable Jeryl F. Leach, Judge <br><br> Trial Court Cause No. 56C01-1902-MI-110 |

**Najam, Judge.**

## Statement of the Case

In several opinions since 2014, this Court has made clear that a transgender person may obtain a change of name on government documents and a change of the gender marker on a birth certificate based only on a showing that the person is making the request in good faith and without a fraudulent or unlawful purpose. We have also repeatedly held that such petitioners are entitled to a waiver of the notice-by-publication requirement for their petitions and are likewise entitled to have their court records sealed to avoid the well known potential for harm or harassment to which our transgender population has been subjected.

Notwithstanding this Court's clear and binding case law on these issues, when R.E., a transgender male, petitioned the trial court to change his name and gender marker on government records, the court demanded that R.E. publish his petition in a local newspaper; litigate the petition in open court; and submit medical evidence to show that R.E. had actually undergone a physical sex change. Not only did the trial court fail to uphold and apply the law but the court disparaged and manifested a bias toward R.E. based upon R.E.'s gender.

We reverse and remand with instructions that the court grant R.E.'s petition for a name change and a change of his gender marker without further delay.

## Facts and Procedural History

R.E. is a transgender male—he was born female, but he identifies as male. On February 4, 2019, R.E. filed in the trial court, *pro se*, a Verified Petition for

Change of Name and Gender. Appellant's App. Vol. 2 at 17. R.E.'s petition cited as support our opinion in *In re Petition for Change of Birth Certificate*, 22 N.E.3d 707 (Ind. Ct. App. 2014). Along with that request, R.E. filed a Verified Written Request for Waiver of Publication for the name change[1] and a Verified Written Request for Sealing of Record pursuant to Indiana Administrative Rule 9(G), asserting that he is "aware of the high rates of violence against transgender people in Indiana and nationwide" and that, "as a transgender man, [he] fear[ed] that [he] will experience violence if the public knows of [his] gender transition." *Id.* at 14, 16. In support of that request, R.E. cited our opinion in *In re the Name Change of A.L.*, 81 N.E.3d 283 (Ind. Ct. App. 2017).

[5] The trial court held its first hearing on R.E.'s request to waive publication and seal the record on March 5. At that hearing, the court engaged R.E. in the following colloquy:

> [R.E.]: I am transitioning to male for [two] plus years now[] but have been representing as male public[ly] for [three] years. I believe it's for my safety to not have it published in the newspaper, considering my identity. I would be discriminated against and possibly may face danger if it were to be published. Considering my unique name, I would be known who I was and I work [in the community]. I would feel like I would be a target for possible discrimination of any kind[], which would make my life harder and possibly may fear for my life.

---

[1] As we have noted on multiple occasions, there is no statutory requirement to publish notice of intent to change one's gender marker. *In re the Name Change of K.H.*, 127 N.E.3d 257, 260 (Ind. Ct. App. 2019) (quoting *In re the Name Change of A.L.*, 81 N.E.3d 283, 285 (Ind. Ct. App. 2017)).

* * *

THE COURT:  . . . [H]ow long have you been transitioning?

[R.E.]:  . . . [S]ocially, I have represented as male for [three] years, I have been on hormones for [two] years and seeing a therapist and doctor for [two] years.

THE COURT:  And this case was originally filed but it was not sealed?  Correct?

[R.E.]:  Correct.

THE COURT:  And that has been a couple of months ago now?

[R.E.]:  I think so, yes.

THE COURT:  Have any incidents arose in that period of time?

[R.E.]:  Considering I have never openly showed my identity, I have always represented as . . . male[,] . . . I don't look female . . . anymore, with these papers I have here . . . .

THE COURT:  Ok, what papers do you have there?

[R.E.]:  They show the percentage and type of discrimination trans individuals [face].

THE COURT:  Are those certified or any other way authenticated documents?

[R.E.]: Uhh, it is an article I got from the American Association for Justice.

THE COURT: Is that something you printed off the internet? Is that what it is?

[R.E.]: I printed it off yesterday.

THE COURT: Well, there are rules of evidence we have to follow . . . .

\* \* \*

[R.E.]: I just don't want to be a target of any, considering I live alone, or I might possibly lose my job considering it could be published and I work with the community . . . .

THE COURT: Why do you feel you might lose your job?

[R.E.]: Because it might affect my work and I am not unfortunately protected f[rom] discrimination in that regard.

THE COURT: How long have you had this current job?

[R.E.]: I have had this job for [several] years.

THE COURT: And what identity did you obtain this job under?

[R.E.]: I obtained it . . . as female for the first year and now I have been representing as male [since then] . . . .

* * *

THE COURT:      So they know you have changed?

[R.E.]:      Yes.

THE COURT:      So then if this is made public, then how would this . . . .

[R.E.]:      Complaints of clients.

THE COURT:      Is there anything else you would like to say in support of your request to seal the record?

[R.E.]:      Just that I don't want to be mainly a target for possible violence considering our type of people that get killed once we are known for who we are. . . .

* * *

THE COURT:      Considering what evidence I do have in front of me, I don't believe you have shown enough for me to grant the request you are asking for.  So, I'm going to deny the request to seal the record and deny the request for waiver of publication.  So in order to go forward . . . you will have to publish [your petition] in the newspaper . . . for [three] consecutive weeks . . . .

Tr. Vol. II at 5-8.

[6]    After R.E. had satisfied the court's demand to publish notice of his petition, in June the court held a second hearing on his petition to change his name and gender marker.  At that hearing, R.E. again testified that he had been

transitioning to male for more than two years. R.E. then attempted to rely on medical records that would have corroborated his testimony, which records R.E.'s treating physician in Chicago had mailed directly to the court. But the court had refused to accept those documents and returned them to R.E.'s physician prior to the June hearing. As R.E. had not been served with notice by the court of that action, the court continued the hearing to July 24 in order for R.E. to again attempt to obtain his medical records.

[7] Following the June hearing and prior to the July hearing, R.E. filed a verified statement with the court in which he attached both his treating physician's statement that R.E. "has had the appropriate clinical treatment for gender transition to the new gender, male," and that physician's affirmation to the Indiana Bureau of Motor Vehicles of R.E.'s gender change. Appellant's App. Vol. 2 at 41. In his verified statement to the court, R.E. asked the court to inform him if his submissions would not be admissible at the upcoming July hearing.

[8] One week later, the court informed R.E. that "the documents submitted are not admissible" because they "fail to comply with Rule 702, [7]03, 704, 705, and 803" of the Indiana Rules of Evidence. *Id.* at 42. Indiana Evidence Rules 702 to 705 relate to expert testimony. Evidence Rule 803 relates to hearsay. R.E. responded to the court's statement by requesting a continuance of the July hearing so that he "may submit exact evidence this Court requires." *Id.* at 43. R.E. further asked the court to inform him "what evidence this Court requires." *Id.*

[9]     The court then converted the July hearing on R.E.'s petition into a status hearing on R.E.'s request for a continuance. At that third hearing, the court informed R.E. that his medical records went to the "ultimate fact that the court needs to find," that is, "whether or not you've gone through sufficient enough procedures to actually transition into a male," and that his treating physician was not permitted to express an opinion on that point. Tr. Vol. II at 18. The court added:

> You submitted a letter from someone claiming to be a doctor. That is suggesting that they have the expertise in this area of genetics or gender determination, whatever it is, and they are just making a simple conclusion. So, to me, that doesn't mean enough to where you have established the fact that you are in fact a male. I don't know what he is basing that opinion on. I don't know if he is a doctor and if he is a doctor who is qualified in this area.

*Id.* at 19. The court then informed R.E. that it needed to know what information and procedures R.E.'s treating physician was "relying on to make that determination" of R.E.'s new gender identity in order for the court to accept his physician's opinion. *Id.* at 20-21. The court then continued the hearing on R.E.'s petition to October.

[10]    Shortly after the July hearing, R.E. obtained counsel to assist him with his petition. On August 19, R.E.'s counsel moved to seal the court records of the proceedings based on the need to prevent harm to R.E. R.E.'s counsel further sought to have R.E.'s medical records admitted through a sworn statement by

R.E.'s treating physician that those records had been kept in the course of the physician's regularly conducted activity.

[11] At the ensuing October hearing—the fourth hearing on R.E.'s petition—R.E. once again testified that he sought to seal the court's records to avoid the potential for harm that he might face as a transgender person. He further once again testified that he had been presenting as male for several years despite having been born female. He added that his petition was being made in good faith and not in an attempt to defraud creditors, a position R.E. had maintained since his original February petition.

[12] R.E.'s counsel then moved for the court to grant the petition. The court then engaged R.E.'s counsel in the following exchange:

> THE COURT: Well, how can you determine whether it's in good faith . . . if there's no evidence before the Court as to what the actual gender of the individual is at this point in time?
>
> [COUNSEL]: Well, he testified that his gender, that he is seeking a change in gender marker to male because he identifies as male . . . .
>
> THE COURT: But just because he identifies as or she [sic] identifies as one or the other[] doesn't mean that there is any evidence before the Court that that's in fact what she [sic] is.
>
> [COUNSEL]: Your Honor, I'm a little bit confused about, first, the pronoun . . . [b]ut also, he has testified that he identifies as male and that's why he is changing his name and he is not seeking to defraud anyone. I don't know what additional

information the Court needs that would be appropriate . . . that is not some sort of medical certification.

THE COURT: The evidence before the Court is that she [sic] was born a female, and that is the marker on her [sic] birth certificate, and there . . . has been nothing before this Court presented to show that has changed.

[COUNSEL]: I mean, but he testified that he, for the last [two] years has transitioned and is on testosterone. I believe this Court can see he has a . . . beard and a deep voice.

THE COURT: And I don't mean this insensitively, I've got an aunt that has a significant amount of facial hair too, that doesn't make her a male.

[COUNSEL]: But what makes one male is that one identifies as one, that's the legal standard here in Indiana. Whether or not the Court believes that one should be able to just change their name and gender marker because they identify as male is a separate issue to the legal standard that governs name and gender marker changes. I mean, we have a certification for the doctor's letter that was previously submitted and was rejected . . . , we can certainly submit that but it is absolutely not the legal standard that any sort of medical documentation be presented to the Court.

THE COURT: Well here is where I stand. This is a Court of Law. There is a petition that's been filed to change birth record and gender marker. The birth record, from what I have heard, is accurate. And I don't have information before me to show that there has . . . been a change to this individual that justifies making a gender marker change.

\* \* \*

There is a fact, you are male or you are a female, there are chromosomes, parents, XX XY, there's other ones, but from what I understand, this person was identified correctly at birth as a female. There has been nothing presented to me that changes that basic makeup of male or female. I understand that from previous statements that he's gone, she's [sic] gone, whichever [sic], through procedures that makes her [sic] look more like a male, but that doesn't prove to me that they are actually a female, or a male. It proves to me that it's [sic] a female that now looks more like a male than like a female . . . .

[COUNSEL]:     First, there's no testimony that the assignment of female at birth is correct, just that's what the assignment at birth was.

THE COURT:     I believe we had that testimony at the last hearing. . . .

[COUNSEL]:     It . . . [is] like the double edge[d] sword, . . . you rejected the [d]octor's letter because there was no expert affidavit but then you are letting the client testify that the assignment at birth is accurate event though that . . . should have been a medical determination[. B]ut . . . it sounds like what you are saying, under your view of gender and sex, you shouldn't be able to get a name change without proving that you are biologically the sex you are seeking to change to, which I understand is a common view, but it's not the legal view. . . .

\* \* \*

THE COURT:     . . . I have a petition that this person wants to change their gender identification from female to male. Alright?

I then need evidence to support that request, and so if you have that, I'm happy to review that.

[COUNSEL]:      I do have that . . . . [I]t's the . . . certification from the [d]octor . . . .

* * *

. . . [T]he [d]octor['s] letter addresses that, but that is not the legal standard[. F]rom 2014, . . . the Court of Appeals [in *In re Birth Certificate*] said . . . that the ultimate focus [is] on whether the [request] is made . . . in good faith [and] not for [a] fraudulent or unlawful purpose and not what medical treatments someone [h]as received. Someone under this standard could have received no medical treatments, they can just view themselves as male and as long as they are changing their gender marker to align with their internal sense of gender, that meets this state's good faith standard.

THE COURT:      So, your position is that gender has nothing to do with the physical body but the mental belief of what it should be?

[COUNSEL]:      Ye[s] . . . .

THE COURT:      Well, and that's where I guess our understanding of what good faith means differs. . . . My belief is, in order to be in good faith, it's got to be factually accurate. And in this case, I don't have that factual evidence.

[COUNSEL]:      I think by saying factually accurate, you are imposing a medical standard . . . that does not exist in the law. . . .

* * *

> . . . The letter from the [d]octor . . . says that he has [had] appropriate clinical treatment f[or] transition.
>
> THE COURT:     And that's making a legal determination . . . .
>
> [COUNSEL]:     It's not, it's a medical determination, the transition.
>
> THE COURT:     Well, any other evidence you want to submit to the Court today?
>
> [COUNSEL]:     I mean, it seems like we are just going around . . .

*Id.* at 30-37.

[13]     At the close of the October hearing, the court refused to seal the record and found "insufficient evidence to support the change of gender and[,] because the petition for name change is based on a request to make the name fit the gender," the court found that "that is not going to be granted as well." *Id.* at 39. In its written order, the court more specifically found and concluded as follows:

> Testimony and argument is provided regarding the request to prohibit public access. The Court finds that this is not a case where a decision is being made before any disclosure occurs. The case has been open to the public for many months. The nature of the Petition . . . was published in a newspaper of general circulation . . . on three occasions, the first of which being nearly six months ago. Petitioner reports that she [sic] has experienced no negative incidents regarding her [sic] petition

during the pendency of this action. Based on this set of facts, Petitioner's request to prohibit public access is denied.

The case proceeds to final hearing . . . . While this Court acknowledges that a cause of action for gender change is recognized by our Courts, there is still a requirement that the Petitioner put forth sufficient evidence to justify awarding the relief sought. While the Court provided the Petitioner multiple opportunities to submit evidence in support of the petition, the only evidence before the Court regarding the Petitioner's alleged change of gender was the Petitioner's claim that she [sic] identifies as male. There is no evidence before the Court to prove that Petitioner's gender has actually changed since the time of her [sic] birth. Petitioner did submit . . . a document from her [sic] attending physician. However, Petitioner failed to lay a proper foundation for the admissibility of the evidence and Petitioner failed to establish that the expert testimony contained therein rested upon reliable scientific principles. Accordingly, the Court finds that the document is inadmissible pursuant to Indiana [Evidence Rules] 702(a) and (b). *The Court finds that Petitioner has failed to set forth sufficient evidence to meet even a minimal threshold of proof that her [sic] gender has actually been changed from female to male. Accordingly, the Court denies the Petitioner's request for gender change.*

The Petitioner testified that the purpose of her [sic] request for change of name was to coincide with her [sic] request to change her [sic] gender . . . . *Since the request for gender change is denied, the purpose . . . for change of name cannot be achieved and . . . is accordingly denied.*

Appellant's App. Vol. 2 at 58-59 (emphases added).

[14]     About one week after the trial court's judgment, R.E. filed his notice of appeal. Along with that notice, R.E. requested our Court to seal the appellate and trial

court records. We granted that request shortly thereafter, and this appeal
ensued.

## Discussion and Decision

### *1. The trial court used an erroneous legal standard in determining R.E.'s petition to change his gender marker.*

[15]   We first consider R.E.'s argument on appeal that the trial court erred when it
denied his petition to change the gender marker on his birth certificate and, by
extension, his request to change his name. Our resolution of this issue turns on
the proper legal standard under which a petitioner for such requests must be
held to demonstrate a basis for relief. We review such issues *de novo*. *E.g.*, *In re
Birth Certificate*, 22 N.E.3d at 708-10. We also note that a trial court abuses its
discretion when it misapplies or misinterprets the law. *E.g.*, *Heraeus Med., LLC
v. Zimmer, Inc.*, 135 N.E.3d 150, 152 (Ind. 2019). Further, to the extent that our
review requires us to consider the trial court's factual determinations, we will
apply a clearly erroneous standard. *E.g.*, *In re A.L.*, 81 N.E.3d at 288.

[16]   It is apparent from the proceedings before the trial court that that court would
not grant R.E.'s petition to change the gender marker on his birth certificate
based on R.E.'s testimony alone but instead wanted some form of medical
evidence that R.E. had actually undergone a physical sex change.[2] In 2014, we

---

[2] It is not lost on this Court that, at three different points in the trial court proceedings, the court rejected
R.E.'s medical evidence, each time for a different reason.

considered another trial court's similar belief and explicitly rejected it:

> We recognize the trial court's concern over what evidence is required to support such a petition. In its order, the court queried in part:
>
>> Can the court grant such a request merely because someone holds themselves out as a member of the other gender? If so, how long must they hold themselves out as a member of the other gender? Is gender reassignment surgery required? Is hormone therapy required? Is a medical opinion required?
>
> The legislature is free to craft specific requirements. Without such guidance, however, it is our view that the ultimate focus should be on whether the petition is made in good faith and not for a fraudulent or unlawful purpose.

*In re Birth Certificate*, 22 N.E.3d at 709-10 (record citation and footnote omitted).

[17]   Thus, all R.E. had to show in order to obtain a change to the gender marker on his birth certificate was that his request was made in good faith and not for a fraudulent or unlawful purpose. There is no question that R.E. met that threshold. Moreover, R.E.'s genuine desire to have all identifying documents conform to his current physical and social identity is apparent. *See id.* at 710.

[18]   The trial court's insistence that R.E. could not meet his burden on his petition without medical evidence of an actual physical change to R.E.'s body, that R.E.'s "gender has actually been changed from female to male," is contrary to law. No such evidence or enhanced burden of proof is required to grant R.E.'s

petition. The trial court was actually aware of our opinion in *In re Birth Certificate*, as R.E. explicitly cited it to the court on multiple occasions. The opinions of this Court are binding upon our trial courts. *S.R. v. Ind. Dep't of Child Servs. (In re M.W.)*, 130 N.E.3d 114, 116 (Ind. Ct. App. 2019). The trial court had no discretion to simply disregard our opinions. In its decision to deny R.E.'s petition to change his name on all identifying government documents and his gender marker on his birth certificate, the trial court erred as a matter of law. The decision of the trial court is reversed, and we remand with instructions for the trial court to grant R.E.'s petition to change his name on government-issued identifying documents and the gender marker on his birth certificate without further delay.

### 2. The trial court unreasonably refused to seal R.E.'s court records.

[19] We next address the trial court's refusal to seal R.E.'s court records. To the extent this issue requires us to construe the legal standard applicable at the time of the trial court proceedings to the sealing of court records—Indiana Administrative Rule 9—our review is *de novo*. *In re A.L.*, 81 N.E.3d at 288. Further, again, a trial court abuses its discretion when it misapplies or misinterprets the law. *Heraeus Med.*, 135 N.E.3d at 152. And to the extent our review requires us to consider the trial court's factual determinations, we will apply the clearly erroneous standard. *In re A.L.*, 81 N.E.3d at 288.

[20] Again, the trial court's decision is clearly against this Court's unambiguous precedent, and the trial court was specifically informed of the relevant case law.

In *In re A.L.*, we noted that, while court records are generally publicly accessible under Administrative Rule 9, there is

> an exception providing that a court record that would otherwise be publicly accessible may be excluded from public access upon a verified written request demonstrating that "[a]cess or dissemination of the Court Record will create a significant risk of substantial harm to the requestor . . . ." Admin. R. 9(G)(4)(a)(ii).
>
> * * *
>
> [The trial court] found . . . that [the petitioner] did not establish that he had been subject to specific threats or violence . . . or that the public filing of such court cases has resulted in targeted violence against transgender individuals.
>
> . . . [T]o publish this notice would be to "out" [the petitioner] as a transgender man to the general public.
>
> [The petitioner] provided evidence that, as an out member of the transgender community, he would face a significantly higher risk of violence, harassment and homicide. . . . Publication of his birth name and new name would enable members of the general public to seek him out, placing him at a significant risk of harm. And in today's day and age, information that is published in a newspaper is likely to be published on the Internet, where it will remain in perpetuity, leaving [the petitioner] at risk for the rest of his life. There was no evidence in opposition to [this] evidence.
>
> Under these circumstances, we find that [the petitioner] established that publication of notice of his petition for a name change would create a significant risk of substantial harm to him. As a result, the trial court should have granted his requests to seal

the record and waive publication pursuant to Administrative
Rule 9. . . .

*Id.* at 289-91

[21]     In a similar, subsequent opinion, we likewise stated:

> The trial court . . . deni[ed the petitioner's] Administrative Rule 9
> petition[ and] noted that [the petitioner] had failed to provide
> evidence of "any violence that has resulted to [the petitioner"
> because of her gender . . . . [I]n *A.L.*, . . . [t]his Court explicitly
> disapproved of that reasoning, noting the sobering statistics
> regarding the risk of harassment, violence, and homicide to the
> transgender population, both nationwide and in Indiana. . . .
>
> In other words, the fact that [the petitioner] did not provide
> evidence that she, herself, or other citizens of Indiana have been
> a target of violence is of no moment. The goal of Rule 9 is
> proactive; it seeks to *prevent* harm. To force petitioners to wait
> until they have already experienced that harm would vitiate the
> purpose of the rule.

*In re the Name Change of M.E.B.*, 126 N.E.3d 932, 936 (Ind. Ct. App. 2019)

(citations and footnote omitted; emphasis in original).

[22]     Here, the trial court made the same errors that we reversed in *In re A.L.* and in

*In re M.E.B.* when the court demanded that R.E. present some evidence of

actual or imminent harm from the publication of his petition and the open court

proceedings. Administrative Rule 9 requires no such evidence. R.E.'s

testimony of the risk of harm faced by our transgender population is common

knowledge and was easily sufficient to meet Administrative Rule 9's

requirements to waive publication and seal the court records. *See id.* (noting "the sobering statistics regarding the risk of harassment, violence, and homicide to the transgender population, both nationwide and in Indiana"). Moreover, the trial court's October finding that this case had been open for "many months" and therefore should not be sealed was disingenuous—R.E. sought to seal the record from the outset, and it was the trial court's refusal to do so that left the record open. Appellant's App. Vol. 2 at 58. The trial court again erred as a matter of law when it disregarded the unmistakable opinions of this Court on these issues and held R.E. to a burden that our case law does not support. The court's judgment is reversed, and we remand with instructions that this case shall remain sealed.

### 3. The trial court treated R.E. inappropriately.

[23] Finally, we are obliged to address the fact that the trial court failed to treat R.E. with the respect R.E. deserves and that we expect from fellow judicial officers. Unfortunately, this is not the first such occasion we have had to publicly admonish one of our trial courts for such derision. In *In re M.E.B.*, we noted:

> Throughout its order, the trial court fails or refuses to use [the petitioner's] preferred pronoun. The order is also permeated with derision for [the petitioner]. We would hope that the trial courts of this state would show far greater respect (as well as objectivity and impartiality) to all litigants appearing before them.

126 N.E.3d at 934 n.1.

[24] That same admonishment applies here even more. The trial court acted contrary to law when it did not apply the proper legal standards to R.E.'s petition, forced R.E. to publish notice in a newspaper and out himself as a transgender person, and, instead of ruling on a simple petition in a timely manner, dragged out that petition through four proceedings over the better part of year. The court refused to use R.E.'s preferred pronoun, not only making it a point to use the incorrect pronoun "she" but also unacceptably referring to R.E. as "it" and "whichever." Tr. Vol. II at 32. The trial court also ridiculed R.E.'s appearance, comparing R.E. to an "aunt that has a significant amount of facial hair." *Id.* at 31.

[25] All parties in Indiana's trial courts deserve to be treated with respect and dignity. The trial court's treatment of R.E. here was disrespectful and inappropriate. As we said in *In re M.E.B.*, "[w]e would hope that the trial courts of this state would show far greater respect (as well as objectivity and impartiality) to all litigants appearing before them." 126 N.E.3d at 934 n.1.

## Conclusion

[26] The trial court erred in at least the following respects: when the court required R.E. to publish notice of his petition; when the court refused to seal the record; and when the court required R.E. to produce medical evidence of an actual physical change to R.E.'s body. In doing so, the trial court obstructed the timely disposition of R.E.'s petition and placed evidentiary burdens upon R.E. that were unjustified and contrary to law. And the court failed to treat R.E. with the respect and dignity to which R.E. is entitled. We reverse the trial

court's judgment and remand with instructions that the court grant R.E.'s petition without further delay. The record of this case shall remain sealed.

[27] Reversed and remanded with instructions.

Vaidik, J., and Tavitas, J., concur.