

FILED
Jun 10 2024, 9:08 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court



IN THE

# Court of Appeals of Indiana

Cory M. Wallace,

*Appellant-Petitioner*

v.

State of Indiana,

*Appellee/Intervenor-Respondent*

---

June 10, 2024

Court of Appeals Case No.
23A-MI-2206

Appeal from the Madison Circuit Court

The Honorable Angela Warner Sims, Judge

Trial Court Cause No.
48C01-2304-MI-127

---

**Opinion by Judge Riley**
Judge Brown concurs in result with separate opinion and Judge Foley concurs in result with separate opinion.

**Riley, Judge.**

## STATEMENT OF THE CASE

Appellant-Petitioner, Cory L. Wallace (Wallace), appeals the trial court's dismissal of his petition to change the gender marker on his birth certificate.

We affirm.

## ISSUE

Wallace presents this court with one issue on appeal, which we restate as: Whether the trial court's dismissal of his petition to change the gender marker on his birth certificate was contrary to law.

## FACTS AND PROCEDURAL HISTORY

On April 18, 2023, Wallace, incarcerated at the Pendleton Correctional Facility, filed an *ex parte* petition for change of the gender marker on his birth certificate. Wallace's "current [s]ex [d]esignation" on his birth certificate shows "[m]ale" but he now "wishes this to [be] [c]hanged to [f]emale because [he] is living as a [t]ransgender [f]emale." (Appellant's App. Vol. II, p. 7). He asserted that his petition was made in "[g]ood [f]aith and not for fraudulent purposes." (Appellant's App. Vol. II, p. 7). On July 25, 2023, the trial court, without a hearing, "and due to public policy in conjunction with I.C. § 34-28-2-1.5," dismissed Wallace's petition because of Wallace's "confinement in the Department of Correction." (Appellant's App. Vol. II, p. 3). On August 14,

2023, Wallace filed a petition for relief from judgment, which was denied by the trial court four days later.

[5] On September 12, 2023, Wallace filed a notice of appeal, naming the State of Indiana as the appellee. Although the petition before the trial court was filed *ex parte*, the State was named on the notice of appeal and on the docket. On February 6, 2024, the State filed a motion to intervene consistent with Indiana Code section 34-33.1-1-1(b). We granted the State's motion to intervene on February 12, 2024.

[6] Wallace now appeals. Additional facts will be provided as necessary.

## DISCUSSION AND DECISION

[7] Born as a male, Wallace has been living as a transgender female while at the Department of Correction (DOC) and has now petitioned the court to change the gender marker on his birth certificate from male to female. The trial court dismissed Wallace's *pro se ex parte* petition *sua sponte* as being contrary to public policy.

[8] Ordinarily, "a trial court may not *sua sponte* dismiss an action unless the court lacks jurisdiction or is otherwise authorized by statute or the rules of procedure." *Tracy v. Morell*, 948 N.E.2d 855, 862 (Ind. Ct. App. 2011). As this case involves the interpretation of a statute, our standard of review is *de novo*. We review legal determinations to ascertain whether the trial court erred in the application of the law. *Quinn v. State*, 45 N.E.3d 39, 44 (Ind. Ct. App. 2015). When a statute is clear and unambiguous, we need not apply any rules of

construction other than giving effect to the plain and ordinary meaning of the language. *Id.* As courts presume that the Legislature intends to avoid unjust or absurd results, we apply statutes "consistent with public policy and convenience." *See Alberici Constructors, Inc. v. Ohio Farmers Ins. Co.*, 866 N.E.2d 740, 743 (Ind. 2007).

[9] The General Assembly has charged the Indiana Department of Health (IDOH) with maintaining a system of vital statistics, administered by the State Registrar. Ind. Code §§ 16-37-1-1, -2. The Registrar must "[k]eep the files and records pertaining to vital statistics," such as births and deaths. I.C. § 16-37-1-2(1). When a child is born, a "person in attendance" must file a "certificate of birth" with the local health officer using the electronic Indiana Birth Registration System. I.C. § 16-37-2-2. Alternatively, the officer must "prepare a certificate of birth from information secured from any person who has knowledge of the birth." *Id.* The local health officer "make[s] a permanent record"—maintained in the State Birth Registration System—of information from the birth certificate, including the child's "sex." I.C. § 16-37-2-9(a).

[10] Although born male, Wallace contends that he now lives as a transgender female and concedes that he is treated as female at the DOC in accordance with the DOC's Policy and Administrative Procedure – Inclusive Gender Practices for Incarcerated Individuals, 02-01-118, effective July 1, 2019. Nonetheless, Wallace petitions the court to now amend his birth certificate to reflect his gender marker as female.

The statute at the center of Wallace's request is Indiana Code section 16-37-2-10, which provides in its entirety:

> (a) As used in this section, "DNA test" means an identification process in which the unique genetic code of an individual that is carried by the individual's deoxyribonucleic acid (DNA) is compared with the genetic codes of another individual.
>
> (b) The state department may make additions to or corrections in a certificate of birth on receipt of adequate documentary evidence, including the results of a DNA test under subsection (c) or a paternity affidavit executed under section 2.1 of this chapter.
>
> (c) The state department may make an addition to a birth certificate based on the results of a DNA test only if:
>> (1) a father is not named on the birth certificate; and
>>
>> (2) a citation to this subsection as the authority for the addition is noted on the birth certificate.

Focusing only on the first clause of Section (b) and essentially ignoring the rest of the statute, early cases interpreting this statute have held that Indiana courts have the statutory authority to grant requests for gender marker changes on birth certificates. In *In re Petition for Change of Birth Certificate*, 22 N.E.3d 707 (Ind. Ct. App. 2014), the seminal case involving an appeal from the denial of a request to change the gender marker of a transgender male who identified as a man, lived as a man, and had undergone extensive medical treatment for gender transition, we observed that IDOH "defers to the courts by requiring a court order to establish adequate documentary evidence for an amendment of gender on a birth certificate." *Id*. at 708-09. In finding that the appellant "made an adequate showing" by presenting ample medical evidence regarding his gender transition, which culminated in sex reassignment surgery, and

concluding that the statute provided general authority for the amendment of birth certificates without any express limitation (in the statute or elsewhere) regarding gender amendments, we held that the trial court erred in denying the petition. *Id*. at 710. We further noted that

> The legislature is free to craft specific requirements. Without such guidance, however, it is our view that the ultimate focus should be on whether the petition is made in good faith and not for a fraudulent or unlawful purpose.

*Id*. Three years later, we analyzed the statute in *In re A.L.*, 81 N.E.3d 283, 289 (Ind. Ct. App. 2017), which was a consolidated appeal arising from a trial court's determination that publication was required for changes of gender marker and name for adults. We reiterated that:

> Unless and until the General Assembly crafts specific requirements regarding gender marker changes, this [c]ourt's common sense standard in *Birth Certificate* is the bar that must be met. Thus, a gender marker change petitioner needs to establish that the petition is made in good faith and not for a fraudulent or unlawful purpose. If a trial court determines that the petitioner has met that standard, no further requirements need to be met and the petition should be granted.

*Id*. More recently, in *Matter of R.E.*, 142 N.E.3d 1045, 1052 (Ind. Ct. App. 2020), a panel of this court reversed the trial court's denial of a petition by a transgender man to have his name and gender marker changed on government documents. "Notwithstanding clear and binding caselaw," the trial court had imposed requirements of publication in a local newspaper, litigation in open

court, and the submission of medical evidence that R.E. "had actually undergone a physical sex change." *Id*. at 1047. We rejected the attempt to engraft additional requirements upon the process of obtaining a gender marker change:

> [A]ll R.E. had to show in order to obtain a change to the gender marker on his birth certificate was that his request was made in good faith and not for a fraudulent or unlawful purpose. There is no question that R.E. met that threshold. Moreover, R.E.'s genuine desire to have all identifying documents conform to his current physical and social identity is apparent.

> The trial court's insistence that R.E. could not meet his burden on his petition without medical evidence of an actual physical change to R.E.'s body, that R.E.'s "gender has actually been changed from female to male," is contrary to law. No such evidence or enhanced burden of proof is required to grant R.E.'s petition.

*Id.* at 1052 (record citation omitted).

[13] However, case law is rarely stagnant, and in 2021, the year following the decision in *Matter of R.E*, we observed a jurisprudential change, which introduced a shift in the then-existing precedents. Subsequent to the line of cases in which we clearly stated that an adult seeking a gender marker change bears the burden of showing good faith and the absence of a fraudulent purpose, we were presented with appeals brought by parents on behalf of their minor child, seeking a change in gender marker on their child's birth certificate. In *Matter of A.B.*, 164 N.E.3d 167, 169 (Ind. Ct. App. 2021), a consolidated appeal

brought by parents who each had been denied a change of gender marker as set forth on their child's birth certificate, the threshold question to be answered was "whether a parent ha[d] the authority to ask a court to amend the gender marker on a minor child's birth certificate." We answered this question in the affirmative, observing that "[t]he fundamental right of parents to make important decisions for their minor children is reflected in a variety of statutes" and that the language of Indiana Code section 16-37-2-10(b) is "broad." *Id.* at 169-70. Addressing the appropriate standard to be applied when considering a parental petition for a gender marker change, this court rejected the parents' contention of applying the same standard as the one applicable to an adult petition, that is, "whether the petition was filed in good faith." *Id.* at 170. Rather, the court promulgated as the appropriate standard whether the change is in the child's best interests and directed that a trial court "may consider the same factors as for a name change," which are those set forth in Indiana Code section 31-17-2-8, governing child custody determinations. *Id.* at 171. The court remanded with instructions to the trial court to address the petitions in accordance with this best interests standard. *Id.*

[14] Judge Pyle dissented, opining that the majority had "strayed into an area reserved for our General Assembly." *Id.* He advised that there was neither "statutory authority to grant petitions to change a minor child's gender to reflect their gender identity and presentation" nor that the Fourteenth Amendment "provides a fundamental right to parents to seek a change in the gender of their children to reflect their gender identity." *Id.* at 171-72.

Acknowledging that to allow a change upon parental initiative might be "a worthy policy objective," he nonetheless concluded that the "remedy must be sought through the legislative branch." *Id*. at 173.

[15] Following the divided decision in *Matter of A.B.*, and with an even stronger shifting position, this court issued the plurality opinion in *In re H.S.*, 175 N.E.3d 1184 (Ind. Ct. App. 2021), *trans. denied*. In *In re H.S.*, Judge Bailey outlined the cases dealing with gender marker changes and noted the legislature's continued inaction to address this emerging area of law. *Id*. at 1186-87. He also recognized Judge Pyle's strong dissent in *Matter of A.B.*, in which Judge Pyle reflected on this court's invasion into the General Assembly's arena. *Matter of A.B.*, 164 N.E.3d at 171 (citing Ind. Const. art. 4, § 1 (reserving legislative power for the General Assembly)). Hesitant to go so far as holding that Indiana Code section 16-37-2-10 applies to a parent seeking a gender marker change for their minor child, Judge Bailey concluded:

> The generic statutory provision has served as a vehicle with enough flexibility to permit its ready application to the gender marker choice of a competent adult. Nevertheless, the statutory flexibility applicable to adults has reached a point of inelasticity where the issue concerns children. And assuming the statute has application when a parent seeks a change of gender marker for a child, its streamlined (essentially unquestioned) application to a child would ignore the State's interest in the child's wellbeing. In my view, any application to a child must be accompanied by a best interests analysis.

*In re H.S.*, 175 N.E.3d at 1188. Judge Bailey then affirmed the trial court's determination that H.S.'s mother had not presented sufficient evidence establishing that a gender marker change was in H.S.'s best interests.[1] *Id.* Judge Pyle, concurring in result with opinion, referenced his dissent in *Matter of A.B.* and reiterated, "I do not believe statutory authority exists for the judiciary to invent a procedure for changing a minor's gender marker to reflect gender identity and presentation." *Id.*

[16] In a more recent plurality opinion in this emerging area of law, *In re O.J.G.S.*, 187 N.E.3d 324 (Ind. Ct. App. 2022), *trans. denied*, Judge Altice firmly adopted Judge Pyle's dissenting opinion in *Matter of A.B.* as the majority's decision.[2] In *In re O.J.G.S.*, this court was again faced with a parent contending that the trial court abused its discretion because all of the evidence, including from child's medical providers, supported changing the gender marker on child's birth certificate to promote her safety and social and emotional well-being. *Id.* at 325. Judge Altice, writing for a divided panel, concluded that

---

[1] In dissent, Judge Crone argued that a best interests analysis applies to petitions filed by parents for a change of their children's gender marker and that the totality of a child's medical history is highly relevant in making this assessment. *In re H.S.*, 175 N.E.3d at 1190. He characterized certain of the trial court's findings, on which it denied the petition, as "blatant and biased overgeneralizations" rather than specific findings based on the evidence. *Id.* Additionally, Judge Crone believed the trial court discounted the parents' testimony and their child's wishes, misrepresented the record, and ignored letters from H.S.'s physician and mental health counselor. *Id.* Judge Crone found the record "more than sufficient to support the granting of [the] petition" and found the trial court's failure to do so to be "a blatant abuse of the trial court's discretion." *Id.* at 1193.

[2] "It has been a tradition in the United States of dissents becoming the law of the land. So you're writing for a future age, and your hope is that with time the Court will see it the way you do." Supreme Court Justice Ruth Bader Ginsburg (1933-2020) on writing a dissenting opinion.

> I agree with Judge Pyle that the plain language of I.C. § 16-37-2-10 "clearly applies only to the use of DNA testing or other documentary evidence in order to establish paternity for the purpose of including the proper parent's name on a child's birth certificate." *Matter of A.B.*, 164 N.E.3d at 172. Starting with *In re Birth Certificate* in 2014, this court essentially amended the statute in order to permit individuals – first adults and then parents on behalf of their minor children – to petition for gender marker changes. This went far beyond the plain language and clear intent of I.C. § 16-37-2-10, a statute which has not been amended by the legislature since 1995, and improperly ventured into legislating. *See Abbott v. State*, 183 N.E.3d 1074 (Ind. 2022) ("'The job of this [c]ourt is to interpret, not legislate, the statutes before it,' and 'we exercise caution so as not to add words' to a statute where none exist.") (cleaned up) (quoting *ESPN, Inc. v. Univ. of Notre Dame Police Dep't*, 62 N.E.3d 1192, 1200 (Ind. 2016) and *West v. Off. of Ind. Sec'y of State*, 54 N.E.3d 349, 353 (Ind. 2016)).

*Id*. at 330. Imploring our supreme court and the legislature to become a catalyst for clarification and change, Judge Altice urged them to speak on this matter, "which has divided this court." *Id*. Concurring in result with Judge Altice's decision, Judge Bailey agreed with the lead opinion that Indiana Code section 16-37-2-10 does not provide trial courts with the authority to order the Registrar of the division of vital statistics within IDOH to change the gender marker on a birth certificate of a child. *Id*. at 330. He also agreed with the dissent authored by Judge Mathias[3] that a remedy for a harm should exist in these circumstances

---

[3] While agreeing with the majority that a statutory framework would be ideal, and while joining in their call for our General Assembly to provide that guidance, Judge Mathias parted ways with the majority that

and that an equitable action has great appeal. *Id.* However, finding that an equitable action cannot accomplish the desired objective where the best interests of a child must be demonstrated, Judge Bailey concluded that even though there is ample evidence that a gender marker change is consistent with the family's wishes and the child's best interests as understood by the child's medical providers, there is absolutely no statutory framework giving a parent the right to order the Registrar to effect a change in the designated sex of the child, absent an error in the designated sex of the child at the time of birth. *Id.*

[17] In the final decision of this court, *Matter of K.G.*, 200 N.E.3d 475, 478 (Ind. Ct. App. 2022), *trans. denied*, a united panel (Bradford, J., with Bailey, J., and Pyle, J. concurring) continued the direction chosen in *In re O.J.G.S.* and concluded that the statute governing additions or corrections to birth certificates does not provide a mechanism by which a parent can seek to have a child's gender marker changed on a birth certificate but only applies to the use of DNA testing or other documentary evidence in order to establish paternity for the purpose of including the proper parent's name on a child's birth certificate.

---

Indiana's judiciary is unable to act without a statutory framework in a child's case. *In re O.J.G.S.*, 187 N.E.3d at 340. Finding that "[o]ur judiciary has the constitutional role and the inherent, equitable authority to hear a claim for relief from a wrong and to grant relief from that wrong so long as we are not barred by statute from doing so," Judge Mathias applied equitable principles to mother's request on behalf of her minor child to change the gender marker on child's birth certificate and would find that the trial court's decision to deny Mother's petition was clearly erroneous. *Id.*

[18]   Unlike the outright statutory prohibition which the recent line of cases in parental requests for a change in children's gender marker has brought to the foreground, we interpret Indiana Code section 16-37-2-10 slightly differently. Section (b) of the statute awards the state department the authority to make both *additions to or corrections in* a birth certificate upon receipt of adequate documentary evidence—which may consist of DNA evidence or a paternity affidavit. *See* I.C. § 16-37-2-10(b). This broad language of Section (b) is then tempered by Section (c) which applies *only* to *additions* to a birth certificate based on DNA evidence and is used only in cases where a father is not named on the birth certificate in order to add the name of the biological parent to the certificate. *See* I.C. § 16-37-2-10(c). As the change in gender marker squarely falls within a correction of the birth certificate, the broader language of Section (b) is applicable in the cause before us.

[19]   This interpretation retains the validity of *In re Petition for Change of Birth Certificate* and its progeny which applied to adult petitioners, as well as the early case law of *Matter of A.B.* and *In re H.S.* which were directed toward our minor community. On its surface, the question of whether a person is male or female appears to be simple enough. To answer the question, we have traditionally assumed that gender is accurately determined at birth, when a "person in attendance" of the birth files a "certificate of birth." *See* I.C. § 16-37-2-2. Despite this simplistic approach, the traditional method of determining gender does not always result in an accurate record, and, complicated with the issues of surgical alteration, sexual identity, and same-sex marriage, the answer has

become more convoluted in recent years. Therefore, interpreting the statute as applicable to paternity cases only—as is being proposed by the most recent shift in jurisprudence by *In re O.J.G.S.* and *Matter of K.G.*—is effectively shutting the gate to any legal recourse for individuals who realize their gender dystrophy later in life or who for various personal reasons were not willing to out themselves or accept their dystrophy until after the age of emancipation. *See* I.C. §§ 16-37-2-2.1 (timing and requirements for the execution of a paternity affidavit); 31-14-5-2 (a child may file a paternity petition at any time before the child reaches twenty years of age).

[20] In his verified petition for change in gender marker, Wallace asserted that he wanted to have his gender marker changed to reflect that he is now living as a transgender female. Wallace did not submit any "adequate documentary evidence" or evidence supporting that his petition was made in good faith and not for a fraudulent or unlawful purpose. *See* I.C. § 16-37-2-10. In the absence of documentary evidence and evidence of his good faith, we cannot say that the trial court erred in dismissing Wallace's petition.[4]

---

[4] The trial court dismissed Wallace's petition "due to public policy in conjunction with I.C. § 34-28-2-1.5." (Appellant's App. Vol. II, p. 3). Indiana Code section 34-28-2-1.5 enumerates the persons prohibited from name changes and includes a person who "is confined to a department of correction facility[.]" I.C. § 34-28-2-1.5(b)(1). However, this statute explicitly prohibits a name change of an incarcerated individual, while no such equivalent statutory prohibition exists with respect to an incarcerated individual's gender change. *See also* DOC Policy and Administrative Procedure – Inclusive Gender Practices for Incarcerated Individuals, 02-01-118, effective July 1, 2019 which institutes provisions and safety protocols for incarcerated individuals living as transgender persons. Accordingly, we cannot say that I.C. § 34-28-2-1.5 is applicable in the situation before us.

Although we affirm the trial court today, we echo the sentiments expressed in *In re O.J.G.S.* that in the absence of any legislative amendment by the General Assembly or jurisprudential guidance by our supreme court, this court operates in a legal gray zone as evidenced by the shifting positions and divisions within this appellate court. Petitioners earnestly seeking a remedy deserve better.

## CONCLUSION

Based on the foregoing, we hold that the trial court properly dismissed Wallace's petition.

Affirmed.

Brown, J. concurs in result with separate opinion
Foley, J. concurs in result with separate opinion

APPELLANT PRO SE

Cory M. Wallace
Pendleton, Indiana

ATTORNEYS FOR APPELLEE/INTERVENOR

Theodore E. Rokita
Attorney General of Indiana

David A. Arthur
Deputy Attorney General
Indianapolis, Indiana

**Foley, Judge, concurring in result.**

Although I agree with the majority that the trial court reached the proper outcome when it dismissed Wallace's petition, I diverge from the reasoning relied upon by the majority in its conclusion.

The majority's opinion follows the course of *In re Petition for Change of Birth Certificate* and its progeny and concludes that Indiana Code section 16-37-2-10 provides statutory authority through which an individual can petition for change in gender marker. However, I believe that the recent line of cases, beginning with Judge Pyle's dissent in *In re A.B.* and continuing with plurality opinions in *In re H.S.* and *In re O.J.G.S.* and the recent majority opinion, *In re K.G.* that have found that section 16-37-2-10 does not provide a mechanism for such relief is the more correct path. I agree with the recent line of cases that the plain language of section 16-37-2-10 clearly only applies to the use of DNA testing or other documentary evidence in order to establish paternity for the purpose of including the proper parent's name on a child's birth certificate. Therefore, there is no statutory authority under which the relief requested in this case can be granted. Without such statutory authority, no matter our position on the merits of the availability of such relief or its policy concerns, we are without the ability to grant the relief requested. In light of the recent division of this court and the lack of statutory guidance in this area, we echo the majority opinion and other panels of this court and again implore the General Assembly to address this issue and provide our courts with guidance on this issue.

Absent a statutory framework to allow for the relief requested, I would affirm the trial court's dismissal of Wallace's petition.

**Brown, Judge, concurring in result.**

I concur with the result reached by Judge Riley and Judge Foley. I acknowledge the split that has developed on the Court of Appeals between cases following the approach expressed in *In re Petition for Change of Birth Certificate*, 22 N.E.3d 707 (Ind. Ct. App. 2014), and the approach in *In re O.J.G.S.*, 187 N.E.3d 324 (Ind. Ct. App. 2022), *reh'g denied*, *trans. denied*.[5] I write separately to note that we need not address this split as the result under either approach results in affirming the trial court's dismissal of Wallace's petition. *See Primmer v. State*, 857 N.E.2d 11, 16 (Ind. Ct. App. 2006) (acknowledging a split on the Court of Appeals as to whether the advisory sentencing scheme should be applied retroactively and holding that we need not decide the issue of retroactivity given that the outcome was the same regardless of which sentencing scheme applied), *trans. denied*.

[5] Justice Slaughter and Justice Molter voted to grant transfer in *In re O.J.G.S.*