

FILED

Jun 21 2019, 7:12 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEYS FOR APPELLANT

Michael R. Limrick
Hoover Hull Turner LLP
Indianapolis, Indiana

Megan Stuart
Indiana Legal Services, Inc.
Bloomington, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Name Change of K.H., | June 21, 2019 |
| K.H., | Court of Appeals Case No. 18A-MI-3077 |
| *Appellant-Petitioner*. | Appeal from the Hamilton Circuit Court |
| | The Honorable Paul A. Felix, Judge |
| | Trial Court Cause No. 29C01-1808-MI-7453 |

**Baker, Judge.**

[1] K.H. is a transgender woman who seeks to change her name and gender marker. She filed requests to waive publication and seal the record pursuant to Indiana Administrative Rule 9. The trial court directed her to publish notice of the Rule 9 hearing in a newspaper and to notify the Indiana Attorney General. While the trial court did not require her to include her name, it required her to include her cause number, date and time of hearing, and the fact that she desired to change her name from a traditionally male name to a traditionally female one. We find that these directives were erroneous. We also find that the record supports K.H.'s Administrative Rule 9 requests. We therefore reverse and remand with instructions that this case shall remain sealed and for further proceedings.

## Facts

[2] K.H. was assigned male at birth but identifies as female. On August 14, 2018, K.H. filed a verified petition to change her name and gender marker; a verified request for waiver of publication; a verified request to seal the record pursuant to Administrative Rule 9; and an affidavit supporting her requests to waive publication and seal the record.[1] The next day, the trial court ordered the case sealed temporarily and set the matter for a hearing.

[3] In advance of that hearing, the trial court ordered K.H. to do two things. First, it ordered her to publish notice of her desire for a name change. While it did

---

[1] K.H. initiated the matter pro se but later retained counsel.

not require her to include her name, it required the notice to state that "[t]he Petitioner desires to change the Petitioner's own name from a name commonly used by males to a name more commonly used by females" and to include the cause number and date and time of the hearing so that objectors could be present. Appellant's App. Vol. II p. 16. Second, it ordered her to give notice of the hearing to the Indiana Attorney General.

[4] On September 14, 2018, K.H. filed a motion asking the trial court to reconsider its demands that she publish notice and notify the Attorney General of her requests to waive publication and seal the record. The trial court denied the motion because the public "should be given a general idea as to why the petitioner is seeking to exclude the records from public access" and because the Attorney General should be able to "make a determination whether to ask to intervene." *Id.* at 29.

[5] On November 7, 2018, K.H. submitted a supplemental affidavit supporting her Rule 9 request. Among other things, she attested as follows:

- Publishing notice and notifying the Attorney General "will cause me to suffer the immediate and irreparable harm that I understood was to be prevented by my request to maintain the confidentiality of my requests to change my name and gender."
- The notice required by the trial court "would be an invitation to the public to come to the Court and offer their opposition to my very existence as a trans woman . . . . I understand the Court's order does not require me to specifically say that I am changing my gender, but that is the reasonable presumption that would be made by someone reading language that I intend to change my name from one commonly associated with males to one commonly associated with females."

- "All of this puts a huge target on my back for people who dislike and hate transgender people.  I do not believe that I can comply with the Court's notice requirements without being subjected to all forms of transphobic persecution."
- "I am also worried that my family and loved ones will also be targeted and terrorized because of who I am."
- "Publishing a notice that tells people I am trans and inviting them to the hearing would give power to the community to dictate my life.  No one has the right to dictate anyone's life, especially when they are just trying to live their best life and be happy.  This is my life.  This is who I am."
- "All I am trying to do is overcome obstacles and the challenges of being accepted as my real self."
- "Please let me live my life like everyone else without having to risk death."

*Id.* at 31-33.

[6] On November 27, 2018, the trial court held a hearing on K.H.'s motions to waive publication and seal the record.  On November 30, 2018, the trial court denied the motions because K.H. did not publish the above-described notice and did not notify the Attorney General.  The trial court certified the order for interlocutory appeal.

# Discussion and Decision

[7] We apply a de novo standard of review to matters of law, including the construction of statutes and rules.  *In re A.L.*, 81 N.E.3d 283, 288 (Ind. Ct. App. 2017).  To the extent that our review requires us to review the trial court's factual determinations, we will apply a clearly erroneous standard.  *Id.*

[8] We have considered this set of issues before. In *In re A.L.*, we found that "there is no statutory requirement to publish notice of intent to change one's gender marker"[2] and that "there is a statutory requirement to publish notice of intent to change one's name, but that statute is explicitly subject to Administrative Rule 9 . . . ." 81 N.E.3d 283, 285 (Ind. Ct. App. 2017).

[9] In *A.L.*, we noted that as a general rule, a petitioner seeking a name change must give notice of the petition in a qualifying newspaper. The legislature has deemed Indiana Code chapter 34-28-2 to be subject to Administrative Rule 9, which provides that as a general rule, all court records are publicly accessible. Ind. Administrative Rule 9(D)(1). There is, however, a list of exceptions to that general rule, which are found in Rule 9(G). Relevant to this appeal is the exception for cases in which "[a]ccess or dissemination of the Court record will create a significant risk of substantial harm to the requestor . . . ." Admin. R. 9(G)(4)(a)(ii).[3]

---

[2] Although we find the publication requirement in this case as a whole to be erroneous, we note that the trial court's astonishing demand that K.H. include in the published notice the fact that she "desires to change [her] own name from a name commonly used by males to a name more commonly used by females," appellant's app. vol. II p. 16, is plainly an attempt at an end-run around the legislature. There is no statute or rule requiring that an individual seeking a gender marker change publish notice of that intent. Had the trial court truly only wanted her to notify the public that she intended to change her name, there would have been *no* need to require the gender specific language in the notice. It is apparent that the trial court intended to force K.H. to signal implicitly to the world that she seeks to change her gender. In so doing, it exceeded its authority.

[3] We also note that this case may fall under the exception for case records that are excluded from public access or declared confidential by Indiana statute or other court rule. Admin. R. 9(G)(2)(b). Medical and mental health records are confidential and protected from public disclosure. *E.g.*, Ind. Code § 16-39-3-10 (declaring that a patient's mental health records and testimony related to a patient's mental health offered in

[10]     When seeking to waive publication and seal the record in such a case, the petitioner is required to take a number of steps. Relevant here is the notice requirement, which states as follows:

> (b)     Notice and Right to Respond.
>
>> (i)     The person seeking to prohibit access has the burden of providing notice to the parties *and such other persons as the Court may direct*.
>
>> (ii)    The person seeking to prohibit access shall provide proof of notice to the Court *or the reason why notice could not or should not be given* consistent with the requirements found in Trial Rule 65(B).
>
>> (iii)   A party or person to whom notice is given shall have twenty (20) days from receiving notice to respond to the request.

Admin. R. 9(G)(4)(b) (emphases added).

[11]     Here, the trial court couched its notice requirements of K.H. under subsection (b)(i), finding that both the general public and the Attorney General qualify as "such other persons as the Court may direct." While there is no explicit limit on the trial court's discretion in naming people to be notified, it is certainly the case that its discretion is not unfettered. It could not, for example, require a

---

a legal proceeding must be a confidential court record). A petitioner's status as transgender will likely implicate both her medical and mental health records.

name change petitioner to notify a specific person unknown to her and unrelated to the case that she sought the protections of Administrative Rule 9. Could the trial court here have required K.H. to notify the owner of Bub's Burgers, or the CEO of Conner Prairie, or the mayors of Noblesville, Fishers, and Carmel—for that matter, could it have required her to notify her next-door neighbor? We think not. Given that the trial court may not require notice to specific people unrelated to the case, we have little difficulty taking the small step in logic to conclude that the trial court may not require notice by publication to the general public—in other words, *everyone*—that a name change petitioner seeks confidentiality.

[12] To the extent that Administrative Rule 9 contemplates public notice, there is one, and only one, way the Rule contemplates that occurring. Rule 9(G)(4)(c)(ii) requires that if the trial court does not initially deny the petitioner's request to prohibit public access, it shall notify the public by posting advance notice of the hearing pursuant to Indiana Code section 5-14-2-5. That statute, in turn, directs notice to the general public be made by posting "a copy of the hearing notice at a place within the confines of the court accessible to the general public." I.C. § 5-14-2-5.[4] Neither the statute nor Administrative Rule 9 provides for alternate forms of public notice—including notice by publication.

---

[4] It is undisputed that this notice was, in fact, posted in this case, though we note that unfortunately, it contained the improper language discussed above in footnote 2.

Therefore, the trial court exceeded its authority and erred by ordering K.H. to take this action.

[13] As for the requirement that K.H. notify the Attorney General, here, too, we believe that the trial court has overstepped its authority. The legislature has never seen fit to name the Attorney General as a party in interest to name change cases or to Administrative Rule 9 cases. The trial court is not entitled to create a connection where one does not already exist legislatively. Under these circumstances, requiring that K.H. notify the Attorney General is no different from requiring that K.H. notify the mayor of Noblesville, which we have already found is outside the bounds of the trial court's authority.

[14] Moreover, even if we were to accept solely for argument's sake that "such other persons as the Court may direct" could include the general public and the Attorney General, we note that the very next subsection provides that the petitioner can either provide proof of notice "or the reason why notice could not or should not be given consistent with the requirements found in Trial Rule 65(B)." Admin. R. 9(G)(4)(b)(ii). Trial Rule 65(B) governs temporary restraining orders, providing that such an order may be granted without notice to the adverse party if

> (1)     it clearly appears from specific facts shown by affidavit or by the verified complaint that immediate and irreparable injury, loss, or damage will result to the applicant before the adverse party or his attorney can be heard in opposition; and

(2)     the applicant's attorney certifies to the court in writing the efforts, if any, which have been made to give notice and the reasons supporting his claim that notice should not be required.

In name change cases, there is no adverse party, meaning that Trial Rule 65(B) is not a perfect fit. But we interpret Administrative Rule 9 to indicate that, in name change cases, a petitioner seeking to waive publication and seal the record need not notify the public, or anyone else, of the proceeding if (1) it clearly appears from specific facts shown by affidavit or by verified pleadings that immediate and irreparable injury, loss, or damage will result to the petitioner if notice of the proceeding is required; and (2) the petitioner or her attorney certifies to the court the reasons why notice should not be required.

[15]    In this case, K.H. met those requirements. First, she submitted an affidavit attesting that she is afraid "that if the public knows I am transgender, I will experience violence, discrimination and an invasion of my privacy. I am aware of the high rate of violence, discrimination, and invasion of privacy against transgender people and I fear I too will experience that violence, discrimination and invasion of privacy as a transgender female." Appellant's App. Vol. II p. 15. She then submitted a supplemental affidavit explaining as follows:

2.    Respectfully, I cannot provide the notice required by the Court. Interacting with the Noblesville Times, its readership, and the Attorney General's office will cause me to suffer the immediate and irreparable harm that I understood was to be prevented by my request to maintain the confidentiality of my requests to change my name and gender.

4.    Going to a newspaper and asking to publish the language from the Court's orders, would effectively be outing me. I would have to engage with their employees and explain that the Court intends to have a hearing—not only for the purpose of determining whether this matter should remain confidential, but also by stating the underlying purpose of the matter[] to them that I am trying to change my name and gender.

5.    The notice itself, if published, would be an invitation to the public to come to the Court and offer their opposition to my very existence as a trans woman and my request to change my gender. . . .

6.    The same goes with the requirement to send a notice to the Attorney General, who I cannot imagine would have any actual interest in a request to keep this matter confidential from the public.

7.    All of this puts a huge target on my back for people who dislike and hate transgender people. I do not believe that I can comply with the Court's notice requirements without being subjected to all forms of transphobic persecution.

8.    I am also worried that my family and loved ones will also be targeted and terrorized because of who I am. . . .

*Id.* at 31-32. First, these attestations sufficiently establish that immediate and irreparable injury, loss, or damage will result to K.H. if she is forced to provide the notice demanded by the trial court. Second, K.H.'s counsel repeatedly informed the court of the reasons why notice should not be required, in both the

motion to reconsider and at the Administrative Rule 9 hearing. Under these circumstances, it is readily apparent that K.H. has met the burden of showing why notice of her confidentiality request should not be given to the general public or to the Attorney General. Therefore, even if the trial court could have directed her to provide notice in such a fashion—which we have already found it could not—she has met the requirement to show that she need not, in fact, comply with that directive.

[16] In sum, the trial court overstepped its authority by demanding that K.H. provide notice by publication and notice to the Attorney General of her intent to waive publication and seal the record of her name change case pursuant to Administrative Rule 9. Concomitantly, the trial court erred by denying her Administrative Rule 9 petition based on her failure to comply with its notice directives.

[17] As to whether K.H. met her burden under Administrative Rule 9 that public access to her case records would create a significant risk of substantial harm to her, we find that she has. The portions of her affidavits quoted above show that if her status as a transgender person becomes publicly known, she would be at significant risk of violence and discrimination. *Id.* at 15; 31-33. Indeed, in *A.L.*, we acknowledged the sobering statistics regarding the risk of harassment, violence, and homicide to the transgender population, both nationwide and in Indiana. 81 N.E.3d at 290. We likewise noted that requiring a transgender person to publish his birth name and new name "would enable members of the general public to seek him out, placing him at a significant risk of harm. And in

today's day and age, information that is published in a newspaper is likely to be published on the Internet, where it will remain in perpetuity, leaving [the transgender person] at risk for the rest of his life." *Id.* at 290-91. Under these circumstances, and given the attestations of K.H. in her affidavits, we find that she met her burden under Administrative Rule 9 to waive publication and seal the case record.[5]

[18] The judgment of the trial court is reversed and remanded with instructions that this case shall remained sealed and for further proceedings.

Najam, J., and Robb, J., concur.

---

[5] The trial court stated that even if it had determined it was necessary to seal the record, "it disagrees with [K.H.] that the record should be sealed forever." Appellant's App. Vol. II p. 7. Administrative Rule 9(G)(4)(d)(iv) states that the trial court must use "the least restrictive means and duration when prohibiting access." In this case, the "least restrictive" means of ensuring K.H.'s safety is to keep the case record sealed. Unless and until someone offers evidence that K.H. is no longer at significant risk of substantial harm if her transgender status becomes publicly known, her record must remain sealed. The only way in which a court record excluded from public access may be made accessible is through the procedures set forth in Administrative Rule 9(G)(7).