Filed 10/29/24

<u>**CERTIFIED FOR PUBLICATION**</u>

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FIFTH APPELLATE DISTRICT

| | |
|---|---|
| In re M.T., for Change of Name. | F086891 |
| | (Super. Ct. No. 2027318) |
| | **OPINION** |

APPEAL from a judgment of the Superior Court of Stanislaus County.  John Mayne, Judge.

California Rural Legal Assistance, Katelyn Marmon, Michael Meuter, and Carla Lopez for Petitioner and Appellant M.T.

-ooOoo-

Appellant M.T. was born a male, but has presented as a female since she was a minor. When appellant was 19 years old, she petitioned to legally change her name and gender to align with her gender identity. The petition was granted by the Stanislaus Superior Court in 2018. In 2023, appellant requested the trial court seal the entire record of her name change and gender marker correction. Appellant asserted she was harassed after she was "outed" on social media, identifying her as transgender and disclosing her workplace, residential address, phone number, and former name. The court denied appellant's request to seal the entire record, but sealed the application to seal and its supporting documentation, and a physician's letter attached to appellant's initial petition for change of name and gender.

Appellant challenges the denial of her request to seal the entire record of her name change and gender marker correction. Appellant contends: (1) the trial court erred in basing its denial of her application to seal records on factors not contained in California Rules of Court, rule 2.550(d);[1] (2) the court failed to protect appellant's overriding privacy interest by only partially sealing the record of her name and gender marker correction; (3) appellant established a substantial probability of prejudice and the court failed to apply the proper standard in its analysis of future harm; and (4) appellant established there is no less restrictive means to achieve her overriding interest in protecting her privacy and safety than by sealing the entirety of the record.

Under the facts and circumstances here, appellant has made a sufficient showing her records should be sealed pursuant to rule 2.550(d). We therefore reverse the trial court's order denying appellant's request to seal the entire record and remand for the court to seal all records that reveal appellant's name change or gender marker correction.

---

[1] All further rule references are to the California Rules of Court.

## FACTUAL AND PROCEDURAL BACKGROUND

Our recitation of facts is curtailed to preserve appellant's privacy. We must, however, provide those facts necessary to adequately consider the issues presented by the appeal. (*Sager v. County of Yuba* (2007) 156 Cal.App.4th 1049, 1051 [the record was sealed to conceal private details about the appellant's mental health, but the court was required to discuss "*some* facts in order to provide an opinion 'in writing with reasons stated' as required by the California Constitution. (Cal. Const., art. VI, § 14.)"].)[2]

### A. *Petition for Change of Name and Gender Marker*

Appellant is a transgender[3] woman whose assigned sex at birth was male. Appellant has presented as a female since she was a minor. In 2017, when she was 19 years old, appellant filed a petition in Stanislaus Superior Court to change the record of her name and gender.[4] Appellant requested her name and gender be changed to conform with her gender identity. Appellant attached the required physician's affidavit attesting that she had undergone clinically appropriate treatment for the purpose of gender transition.[5] No objections to the petition were filed.

---

[2] Appellant filed redacted and unredacted versions of her opening brief pursuant to rule 8.46(g).

[3] "'Transgender' is a general term that refers to a person whose gender identity differs from the person's sex assigned at birth.…" (Cal. Code Regs., tit. 2, § 11030, subd. (e); see Sen. Bill No. 179 (2017–2018 Reg. Sess.) § 2, subd. (e) ["Transgender is an umbrella term used to describe people whose gender identity or gender expression do not match the gender they were assigned at birth"].) "'Gender identity' means each person's internal understanding of their gender, or the perception of a person's gender identity, which may include male, female, a combination of male and female, neither male nor female, a gender different from the person's sex assigned at birth, or transgender." (Cal. Code Regs., tit. 2, § 11030, subd. (b).) "'Gender expression' means a person's gender-related appearance and behavior whether or not stereotypically associated with the person's assigned sex at birth." (Gov. Code, § 12926, subd. (r)(2); see Cal. Code Regs., tit. 2, § 11030, subd. (a).)

[4] Appellant petitioned to change her name and gender using former Judicial Council form NC-200.

[5] A physician's affidavit is no longer required for a gender marker correction petition. (Health & Saf. Code, § 103430, former subd. (a); Stats. 2017, ch. 853, § 13.)

3.

In 2018, the trial court granted appellant's petition after she appeared at a hearing. The court issued a decree changing name and gender using former Judicial Council form NC-230.

Appellant subsequently kept her transgender identity private. She did not disclose her transgender identity at her workplace or school. Appellant only disclosed her previous legal name when required to do so by law. She presented herself as a female and by her new name.

### B.     *Application to Seal Records*

In 2023, appellant filed an application to seal the record of her name and gender correction in its entirety. Appellant asserted the public availability of the information in the record revealed her medical history and had subjected her to discrimination, harassment and violence based on discovery of her transgender status. She argued sealing the entire record was imperative and justified for the protection of her privacy, safety, health, and well-being. She further argued prevention of any future harm to her overrides the public's interest in access to public records, the sealing was narrowly tailored to appellant's interests and there was no less restrictive alternative.

In a declaration attached to her application, appellant stated she discovered her case record was publicly available online in 2022 when she searched her current name. The information online included appellant's private medical and contact information as well as appellant's former name.

Appellant reported she was publicly "outed" on social media in 2023. Attached as an exhibit to her application was a social media post with a photograph of appellant at work disclosing her former name and referring to appellant as a "tranny."[6] The post

---

**6**     The term "tranny" "is usually derogatory and is now regarded as offensive if used of a transgender woman." (OED Online, March 2024, Oxford University Press <https://www.oed.com/search/dictionary/?scope=Entries&q=tranny> [as of Oct. 29, 2024], archived at < https://perma.cc/Q5M9-WYCN>.)

4.

included offensive comments about appellant and identified appellant's current and former workplace, home address, and phone number. The post also divulged the last name of the physician who supported appellant's name and gender correction petition. Appellant reported repeated harassment by anonymous social media users and submitted transphobic messages from these users as exhibits. She shut down all her social media accounts due to cyberbullying and repeated publishing of her private information.

Appellant's transgender identity was anonymously disclosed to her workplace and school. Her employer's human resources department contacted her after the disclosure, which made appellant uncomfortable as she had not previously shared this information. Appellant ultimately left that job.

The trial court set appellant's application to seal for a hearing.

### C.     *Hearing and Ruling on the Application to Seal*

At the hearing, appellant's counsel argued the public nature of the records made it possible for bad actors to find highly personal information about appellant and publicly disseminate that information, putting appellant's privacy and safety at risk.[7] Counsel stated appellant had been exposed and threatened, and her private information had been disclosed at work and school.

The trial court was skeptical there was evidence the prior issues were initiated by the court's records or that removal of those records would assist appellant. The court queried how sealing the records would "solve the problem" and noted the five-year gap between the name and gender correction petition and the application to seal. At appellant's request, the court briefly questioned appellant in chambers with her counsel present. Appellant had some difficulty answering questions, but the court concluded this was not due to an intent to evade. Appellant's counsel argued in final points that

---

[7]     The proceedings before the trial court were summarized in a settled statement because they were not recorded by a court reporter. (Rule 8.137(b)(1)(A).)

appellant's safety had been threatened, she feels exposed and unsafe, and there is no superseding public interest in this highly personal information remaining public.

The trial court issued two orders regarding appellant's application, one sealed and one unsealed. In the unsealed order, the court denied the application to seal the record in its entirety. In addition to the sealed portion of the court's ruling, the court sealed: (1) appellant's application to seal, memorandum of points and authorities, declaration and exhibits; and (2) a 2017 letter from appellant's physician attached to her petition to change her name and gender.

The trial court's unsealed order stated that in determining whether to seal records, the court must weigh the constitutional requirements of public access to civil trials under the First Amendment against such factors as privacy. The court noted California's liberal name change policy carries with it a strong presumption that name changes be made public, citing *In re Useldinger* (1939) 35 Cal.App.2d 723 (*Useldinger*). The court stated a name change would otherwise make it more difficult for creditors and others with legitimate reasons to locate those who had changed their name. The court concluded appellant had failed to show an overriding interest supports sealing the records. Finally, the court stated appellant primarily argued for "a general rule that gender switches should be private due to issues surrounding the transgender community." This was considered a "legislative request" the court cannot grant, but must instead determine on an individualized basis whether to seal the record.

Appellant filed a timely notice of appeal.[8] No respondent has appeared before this court.[9]

---

[8] An order on a motion to seal documents is appealable as a final order on a collateral matter. (*Mercury Interactive Corp. v. Klein* (2007) 158 Cal.App.4th 60, 75–77 (*Mercury*); *In re Marriage of Tamir* (2021) 72 Cal.App.5th 1068, 1078, fn. 5 (*Tamir*).)

[9] This is unsurprising as the record does not indicate an adverse party or aggrieved party other than appellant. (See *Six4Three, LLC v. Facebook, Inc.* (2020) 49 Cal.App.5th 109, 115 [only an aggrieved party may appeal a sealing order]; Code Civ. Proc., § 902; *Doe v. Regents of*

6.

## I.    Access to Court Records

In California, court records are public documents generally available to the public. (*Estate of Hearst* (1977) 67 Cal.App.3d 777, 782; § 124, subd. (a) ["the sittings of every court shall be public" subject to exceptions]; Cal. Const. art. 1, § 3, subd. (b)(1) ["[t]he people have the right of access to information concerning the conduct of the people's business"].)  When "individuals employ the public powers of state courts to accomplish private ends … they do so in full knowledge of the possibly disadvantageous circumstance that the documents and records filed … will be open to public inspection." (*Estate of Hearst, supra*, at p. 783.)

### A.    Common Law and First Amendment Rights of Access

California has recognized two rights of access by the public to court records:  a common law right of access and a constitutional right of access grounded in the First Amendment.  (*Overstock.com, Inc. v. Goldman Sachs Group, Inc.* (2014) 231 Cal.App.4th 471, 483–486 (*Overstock*).)

Under the common law right of access, court records are presumed "'open to the public unless they are specifically exempted from disclosure by statute or are protected by the court itself due to the necessity of confidentiality.'"  (*Overstock*, *supra*, 231 Cal.App.4th at p. 483.)

Case law has long recognized the public has a First Amendment right of access to criminal proceedings.  (*NBC Subsidiary* (*KNBC-TV*)*, Inc. v. Superior Court* (1999) 20 Cal.4th 1178, 1197–1207 (*NBC Subsidiary*).)  In *NBC Subsidiary*, our Supreme Court concluded "the First Amendment right of access applies to civil proceedings as well as to

---

*University of California* (2022) 80 Cal.App.5th 282, 293 [an aggrieved person is one whose rights or interests are injuriously affected in an immediate and substantial way].)  We decide the matter based on the record, appellant's opening brief and oral argument.  (Rule 8.220(a)(2).)

Further undesignated statutory references are to the Code of Civil Procedure.

criminal proceedings." (*Id.* at p. 1209.) The court determined "the public has an interest, in *all* civil cases, in observing and assessing the performance of its public judicial system, and that interest strongly supports a general right of access in ordinary civil cases." (*Id.* at p. 1210.) The public however does not have "an 'unrestricted' right of access" and "under certain circumstances, the presumption of openness can be overcome upon a proper showing." (*Id.* at p. 1211.) The "'presumption of openness may be overcome only by an overriding interest based on findings that closure is essential to preserve higher values and is narrowly tailored to serve that interest. The interest is to be articulated along with findings specific enough that a reviewing court can determine whether the closure order was properly entered.'" (*Id.* at p. 1204, quoting *Press-Enterprise Co. v. Superior Court of Cal.* (1984) 464 U.S. 501, 510 (*Press-Enterprise I*), italics omitted.) In a well-known footnote, the court stated: "Numerous reviewing courts likewise have found a First Amendment right of access to civil litigation documents filed in court as a basis for adjudication. [Citations.] … [¶] [T]he First Amendment does not compel public access to discovery materials that are neither used at trial nor submitted as a basis for adjudication." (*NBC Subsidiary, supra*, at pp. 1208–1209, fn. 25.)

### B. The Sealed Records Rules

Based on the standards set forth in *NBC Subsidiary*, the Judicial Council in 2001 adopted two rules regarding the sealing of trial court records: rules 2.550 and 2.551.[10] (*Mercury*, *supra*, 158 Cal.App.4th at p. 68.) The Advisory Committee's comment to rule 2.550 states rules 2.550 and 2.551 "apply to civil and criminal cases. They recognize the First Amendment right of access to documents used at trial or as a basis of adjudication." (Advisory Com. com., rule 2.550.)

---

[10] The predecessors to rules 2.550 and 2.551 were former rules 243.1 and 243.2. The former and current versions of the rules do not substantively differ.

A party seeking a sealing order must file a motion or an application with a memorandum and a declaration containing facts sufficient to justify the sealing. (Rule 2.551(b)(1); see *H.B. Fuller Co. v. Doe* (2007) 151 Cal.App.4th 879, 894 (*H.B. Fuller*) [the party seeking to seal documents bears the burden of presenting sufficient information to support sealing].) A court may order the record sealed only upon expressly finding facts that establish: "(1) There exists an overriding interest that overcomes the right of public access to the record; [¶] (2) The overriding interest supports sealing the record; [¶] (3) A substantial probability exists that the overriding interest will be prejudiced if the record is not sealed; [¶] (4) The proposed sealing is narrowly tailored; and [¶] (5) No less restrictive means exist to achieve the overriding interest." (Rule 2.550(d)(1)–(5).) The court must specifically state the facts that support the order and seal only those documents and pages "that contain the material that needs to be placed under seal." (Rule 2.550(e)(1)(B).)

The sealed records rules "apply to records sealed or proposed to be sealed by court order" and "to discovery materials that are used at trial or submitted as a basis for adjudication of matters other than discovery motions or proceedings." (Rule 2.550(a)(1). (3).) The rules do not apply to records that must be kept confidential by law. (Rule 2.550(a)(2).)[11]

## II.     Standard of Review

In reviewing a court's decision to seal or unseal records, the California appellate courts have generally employed an abuse of discretion standard when the common law right of access applies. (*Overstock*, *supra*, 231 Cal.App.4th at p. 490.) The courts are split though on the standard of review when the constitutionally based sealed records rules apply. (*Ibid*.)

---

[11]     Whether the sealed records rules apply is subject to de novo review. (*Overstock*, *supra*, 231 Cal.App.4th at p. 492.) Appellant impliedly concedes, and we agree, the rules apply to the records she seeks to seal as these documents do not fall under an exception.

In *In re Providian Credit Card Cases* (2002) 96 Cal.App.4th 292 (*Providian*), the defendants argued several documents should remain under seal as they purportedly contained trade secrets. (*Id.* at p. 297.) Although the defendants only challenged the trial court's order to unseal documents, *Providian* addressed the applicable analysis for reviewing both an order to seal and an order to unseal. (*Id.* at pp. 301–302.) *Providian* determined the court proceeds in two stages in reviewing an order to seal: (1) examine the express findings of fact required by the rule to determine if they are supported by substantial evidence based on the entire record; and (2) decide whether the trial court abused its discretion in ordering a record sealed in light of those express findings. (*Ibid.*) *Providian* considered a trial court's decision to unseal records "the functional equivalent of denying a motion to seal them." (*Id.* at p. 302.) In deciding to unseal records, "a trial court is clearly, if impliedly, determining that there is no 'overriding interest that overcomes the right of public access to the record,' and/or that the other requirements of rule [2.550(d)] have not been met." (*Ibid.*) The "nature of the claimed 'overriding interest' will … help define the scope of fact-related issues which may be germane to that interest. Moreover, the papers submitted to the trial court may also identify subjects for implied findings." (*Ibid.*) *Providian* concluded that where a party challenges a decision to unseal records (or the equivalent denial of a request to seal), the reviewing court examines the entire record for substantial evidence supporting the trial court's implied findings the requirements for sealing have not been met. (*Id.* at pp. 302–303.)

The Second District Court of Appeal, Division Six, in *People v. Jackson* (2005) 128 Cal.App.4th 1009 (*Jackson*) took a different approach. In *Jackson*, NBC challenged the trial court's order sealing certain records in the criminal proceedings against Michael Jackson for child molestation. (*Id.* at p. 1014.) Jackson argued the standard of review is abuse of discretion, citing *Providian*, while NBC argued for de novo review. (*Jackson, supra*, at p. 1018.) The *Jackson* court found that while "*Providian*'s rationale arguably is persuasive in applying an abuse of discretion standard of review when deciding the

10.

propriety of an order to unseal documents relating to trade secrets," the court doubted whether abuse of discretion "is the appropriate standard when sealing the type of documents involved in the instant case." (*Id.* at p. 1020.) The *Jackson* court acknowledged our Supreme Court has applied independent review to cases implicating the First Amendment. (*Jackson, supra*, at p. 1021.) The court applied de novo review as "the equivalent" of independent review because the trial court did not take testimony and had reviewed the same record before the appellate court. (*Ibid.*)

The Sixth District Court of Appeal in *Oiye v. Fox* (2012) 211 Cal.App.4th 1036 (*Oiye*) believed the *Jackson* court applied independent review based on the state of the record, not because First Amendment rights were implicated. (*Id.* at p. 1067.) The defendant in *Oiye* challenged the trial court's order sealing a declaration with portions of the plaintiff's medical records attached as exhibits. (*Oiye, supra*, at pp. 1062–1063.) Because the state of the record was like the record in *Jackson*, the *Oiye* court applied independent review to the propriety of the trial court's sealing order. (*Oiye, supra*, at pp. 1067–1068.)

But the First District Court of Appeal, Division One, in *Overstock* disagreed *Jackson* applied independent review because of the state of the record and instead found "the court did so because the sealed records rules are grounded in the First Amendment right of access." (*Overstock, supra*, 231 Cal.App.4th at p. 492.) *Overstock* concluded, however, there was no need to resolve whether *Providian* or *Jackson* most accurately sets forth the applicable standard to an order sealing records because "the courts have consistently employed the approach articulated in *Providian*" in the context of an order *denying* sealing. (*Overstock, supra*, at p. 492.) Specifically, for an order denying sealing, the reviewing court examines "whether substantial evidence supports the trial court's express or implied findings that the requirements for sealing are not met." (*Ibid.*; accord, *Tamir, supra*, 72 Cal.App.5th at pp. 1079–1081; *Providian, supra*, 96 Cal.App.4th at pp. 302–303.)

11.

Appellant relies on *Jackson* to argue the trial court's order is subject to independent review because the order implicates the First Amendment right of access. *Jackson* is distinguishable because NBC challenged the court's order to seal records, whereas appellant challenges the court's denial of her motion to seal the entire record. If indeed the *Oiye* court was correct that *Jackson* applied independent review because "no declarations were presented regarding the propriety of the sealing order," the same cannot be said of the record here. (*Oiye*, *supra*, 211 Cal.App.4th at p. 1067.)

We therefore review the trial court's order denying appellant's application to seal for substantial evidence. Substantial evidence "must be reasonable in nature, credible, and of solid value." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 51 (*Hill*).) We review de novo questions of law raised by the trial court's order. (*Mercury, supra*, 158 Cal.App.4th at p. 81.)

## III. Propriety of the Order Denying Application to Seal

### A. Asserted Overriding Interests

Appellant argues her overriding privacy and safety interests in concealing her transgender identity overcome the right of public access to the record of her name and gender correction.

*NBC Subsidiary* noted privacy interests among the various overriding interests that have supported closed proceedings or sealing records. (*NBC Subsidiary, supra*, 20 Cal.4th at p. 1222, fn. 46.) For example, in *Press-Enterprise I*, the United States Supreme Court held that in a criminal trial the "jury selection process may, in some circumstances, give rise to a compelling interest of a prospective juror when interrogation touches on deeply personal matters that person has legitimate reasons for keeping out of the public domain." (*Press-Enterprise I, supra*, 464 U.S. at p. 511.) In those circumstances, a juror's right to privacy may warrant sealing the transcript of voir dire proceedings or withholding the juror's name from the record. (*Id.* at p. 512.)

Pursuant to *NBC Subsidiary* and rule 2.550, "trial courts may redact or seal particular documents to protect private information concerning an overriding privacy interest." (*In re Marriage of Nicholas* (2010) 186 Cal.App.4th 1566, 1568.) "While commercial harm or embarrassment of a party does not alone justify sealing the entire record of a case [citation], it is appropriate to seal certain records when those particular records contain highly sensitive and potentially embarrassing personal information about individuals." (*Jackson, supra*, 128 Cal.App.4th at p. 1024.) *Jackson* thus affirmed the trial court's order sealing certain records to protect the privacy of minors regarding alleged sexual misconduct. (*Id.* at pp. 1021–1024.) Courts have also sealed records based on a "state-recognized privacy interest in financial information." (*Overstock, supra*, 231 Cal.App.4th at pp. 504–506.)

The *Oiye* court "recognized 'that a person's medical history, including psychological records, falls within the zone of informational privacy protected' by the state and federal Constitutions." (*Oiye, supra*, 211 Cal.App.4th at p. 1068.) In affirming the order sealing the plaintiff's medical records, the court held that "[w]hile '[p]rivacy concerns are not absolute [and] must be balanced against other important interests' [citation], … the public's general right of access to court records recognized in rule 2.550 must give way to the public's concern about the privacy of medical information in this case …." (*Id.* at p. 1070.)

Here, the trial court focused on whether appellant has a privacy interest in her name change. California has long recognized a "common law … right to change one's personal name without the necessity of legal proceedings, and the purpose of the statutory procedure is simply to have, wherever possible, a record of the change." (*In re Ross* (1937) 8 Cal.2d 608, 609; § 1275 et seq. [outlining statutory procedure for a petition to change names].)

Appellant did not solely change her name; she simultaneously changed the record of her gender to conform with her gender identity. While appellant's application to seal

13.

her records primarily focused on her privacy interest in concealing her transgender identity, the record does not show the trial court considered whether that interest differs materially from solely changing one's name.

We have not unearthed any California cases specifically addressing whether a transgender person has a privacy interest in concealing their transgender identity that may support sealing records under rule 2.550(d). This is a question of law we decide de novo. (*Mercury, supra*, 158 Cal.App.4th at p. 81.)

Privacy is an inalienable right enshrined in the California Constitution. (Cal. Const. art. 1, § 1.) The right to privacy was added by initiative in 1972. (*Hill, supra*, 7 Cal.4th at p. 15.) Under the privacy amendment, "the *definition* of the right of privacy is simply the 'right to be left alone.'" (*Id.* at p. 81 (dis. opn. of Mosk, J.), citing Warren & Brandeis, *The Right to Privacy* (1890) 4 Harv. L.Rev. 193, 193 [detailing concept of common law right of privacy].) The right to privacy "'is not so much one of total secrecy as it is of the right to *define* one's circle of intimacy—to choose who shall see beneath the quotidian mask.'" (*Hill, supra*, at p. 25.) This right encompasses "informational privacy," including "an interest in limiting disclosure of confidential information about bodily condition." (*Id.* at p. 41.)

Federal constitutional law also "recognizes a 'right to informational privacy' stemming from 'the individual interest in avoiding disclosure of personal matters.'" (*Endy v. County of Los Angeles* (9th Cir. 2020) 975 F.3d 757, 768.)[12] In *Powell v.*

---

[12] Unlike the California Constitution, the "federal Constitution contains no provision expressly setting forth or guaranteeing a constitutional right of 'privacy ….'" (*American Academy of Pediatrics v. Lungren* (1997) 16 Cal.4th 307, 326.) Therefore, the "'precise bounds' of the [federal] constitutional right to privacy are uncertain." (*Doe v. Garland* (9th Cir. 2021) 17 F.4th 941, 946.) However, "it is well established that the California Constitution 'is, and always has been, a document of independent force' [citation], and that the rights embodied in and protected by the state Constitution are not invariably identical to the rights contained in the federal Constitution. [Citation.] California cases long have recognized the independence of the California Constitution [citation], and article 1, section 24, of the California Constitution expressly confirms that the rights 'guaranteed by this Constitution are not dependent on those

*Schriver* (2d Cir. 1999) 175 F.3d 107 (*Powell*), the Second Circuit Court of Appeals considered whether a prison inmate had a federal constitutional right to privacy to maintain confidentiality of her transsexualism. (*Id.* at pp. 108–110.)[13] A correctional officer disclosed the inmate's gender confirmation surgery and HIV-positive status in front of other inmates and staff. (*Powell, supra*, at p. 109.) In holding "that individuals who are transsexuals are among those who possess a constitutional right to maintain medical confidentiality" (*id.* at p. 112, fn. omitted), the court found the "excru[c]iatingly private and intimate nature of transsexualism, for persons who wish to preserve privacy in the matter, is really beyond debate" (*id.* at p. 111). The court further found "transsexualism is the unusual condition that is likely to provoke both an intense desire to preserve one's medical confidentiality, as well as hostility and intolerance from others." (*Ibid.*) It was "similarly obvious that an individual who reveals that she is a transsexual 'potentially exposes herself … to discrimination and intolerance.'" (*Id.* at pp. 111–112.)

Although no California case has addressed whether a transgender person's privacy or safety interests can support sealing name change or gender marker correction records, a handful of our sister states have addressed the question under their respective laws and court rules. The Indiana Court of Appeals has been particularly active in this regard and consistently concluded significant risks to transgender individuals support sealing records. (See e.g., *In re A.L.* (Ind. Ct.App. 2017) 81 N.E.3d 283, 289–291; *Matter of R.E.*

---

guaranteed by the United States Constitution.'" (*American Academy of Pediatrics, supra*, at p. 325.) "[P]ast California cases establish that, in many contexts, the scope and application of the state constitutional right of privacy is broader and more protective of privacy than the federal constitutional right of privacy as interpreted by the federal courts." (*Id.* at p. 326.)

[13] According to the American Psychological Association, transsexual is an identity that falls under the transgender umbrella. (*Understanding transgender people, gender identity and gender expression* <https://www.apa.org/topics/lgbtq/transgender-people-gender-identity-gender-expression> [as of Oct. 29, 2024], archived at <https://perma.cc/7FPJ-QVCC>.) "The term *transsexual* refers to people whose gender identity is different from their assigned sex. Often, transsexual people alter or wish to alter their bodies through hormones, surgery, and other means to make their bodies as congruent as possible with their gender identities." (*Ibid.*)

(Ind. Ct.App. 2020) 142 N.E.3d 1045, 1053–1054; *Matter of K.H.* (Ind. Ct.App. 2019) 127 N.E.3d 257, 263; *Matter of M.E.B.* (Ind. Ct.App. 2019) 126 N.E.3d 932, 935–938.) In New Jersey, the Appellate Division of the Superior Court of Mercer County reversed a trial court's denial of a transgender man's request to seal the record of his name change and found the man's privacy interest in being transgender outweighed the presumption all court and administrative records are open for public inspection. (*Matter of T.I.C.-C.* (N.J. Super. A.D. 2022) 271 A.3d 350.)[14] Keeping the record publicly available "would violate appellant's right to privacy and could heighten the risk of physical harm to appellant, or even facilitate such harm by making it easier for people to identify him as transgender. [T]he only expressed public interest in name change applications is protecting against those seeking to avoid or obstruct criminal prosecution, avoid creditors, or perpetrate a criminal or civil fraud." (*Matter of T.I.C.-C., supra*, at p. 360.)[15] The law and facts supported sealing the record since none of those concerns applied to the appellant. (*Matter of T.I.C.-C., supra*, at p. 360.) For its part, New York enacted a law in 2021 permitting sealing name change records where there is a risk of violence or discrimination because of the applicant's transgender status even if the applicant has not

---

[14] Under the applicable New Jersey rule, a party seeking to seal records must show: "(1) Disclosure will likely cause a clearly defined and serious injury to any person or entity; and [¶] (2) The person's or entity's interest in privacy substantially outweighs the presumption that all court and administrative records are open for public inspection .…" (*Matter of T.I.C.-C., supra*, 271 A.3d at p. 357.)

[15] The Division noted "[c]ase law from outside New Jersey also explicitly supports finding a right to privacy in one's transgender status," citing *Powell, supra*, 175 F.3d at pages 111–112; *Ray v. McCloud* (S.D. Ohio 2020) 507 F.Supp.3d 925, 931–932 (finding right to privacy in being transgender); *Grimes v. County of Cook* (N.D. Ill. 2020) 455 F.Supp.3d 630, 638 (finding that the plaintiff's transgender status qualified as private medical information); *Gonzalez v. Nevares* (P.R. 2018) 305 F.Supp.3d 327, 333 ("The Commonwealth's forced disclosure of [the] plaintiffs' transgender status violates their constitutional right to decisional privacy."). (*Matter of T.I.C.-C., supra*, 271 A.3d at p. 359, fn. 6.)

16.

personally experienced threats to their personal safety. (*Cody VV. v. Brandi VV.* (N.Y. 2024) 205 N.Y.S.3d 772, 774–775.)[16]

A person's gender expression is how they present to the public. What a person reveals to the public is generally not private. (See e.g., *Overstock, supra*, 231 Cal.App.4th at pp. 507–508 [no financial privacy interest in concealing records of publicly known clients]; *H.B. Fuller, supra*, 151 Cal.App.4th at p. 898 ["there is no justification for sealing records that contain only facts already known or available to the public"]; *Moreno v. Hanford Sentinel, Inc.* (2009) 172 Cal.App.4th 1125, 1130 [a matter that is already public or in the public domain is not private].) But the right to privacy encompasses "the right to conceal information about oneself." (*Wolfe v. Schaefer* (7th Cir. 2010) 619 F.3d 782, 784; *Hill, supra*, 7 Cal.4th at p. 25 [privacy rights "emanat[e] from personal needs to establish and maintain identity and self-esteem by controlling self-disclosure"].) How a person presents in public does not reveal their assigned sex at birth, nor does it reveal that person's internal understanding of their gender. Furthermore, what was obvious more than 20 years ago to the *Powell* court remains obvious today. Transgender people experience harassment and violence at levels greater than other segments of the American public. A 2022 national survey of transgender people revealed that 39 percent of respondents reported being harassed online, nearly one-third (30 percent) reported being verbally harassed, and 3 percent reported being physically

---

[16] Specifically, New York's Civil Rights Law section 64-a states: "If the court shall find that open record of an applicant's change of name would jeopardize such applicant's personal safety, based on totality of the circumstances, the court shall, at the request of the applicant or sua sponte, order the records of such change of name proceeding be sealed, to be opened only by order of the court for good cause shown or at the request of the applicant. For the purposes of this section, 'totality of the circumstances' shall include, but not be limited to, a consideration of the risk of violence or discrimination against the applicant, including such applicant's status as transgender or as the subject of domestic violence. The court shall not deny such sealing request solely on the basis that the applicant lacks specific instances of or a personal history of threat to personal safety."

attacked in the last 12 months.[17]  A smaller national survey from the same year found that nearly 6 in 10 transgender adults reported being discriminated against because of their gender identity and/or expression, with 64 percent being verbally attacked and one in four being physically attacked.[18]  The Federal Bureau of Investigation reported a significant increase of nearly 40 percent in anti-transgender hate crime incidents nationally between 2021 and 2022.[19]  In California, reported hate crimes involving a gender bias increased by approximately 55 percent from 2021 to 2022.[20]  These dreadful statistics make self-evident why transgender people have an interest in deciding with whom they disclose their transgender identity.

We conclude whether a transgender person's gender identity conforms with their assigned sex at birth is intimate personal information entitled to protection under the right to privacy.  A transgender person thus has a privacy interest in concealing their transgender identity.

Recognition of this interest does not relieve appellant of her burden to show her records must be sealed under rule 2.550(d) because California law does not require

---

[17]  National Center for Transgender Equality, Early Insights:  A Report of the 2022 United States Transgender Survey (2024), page 21 <https://transequality.org/sites/default/files/2024-02/2022%20USTS%20Early%20Insights%20Report_FINAL.pdf> [as of Oct. 29, 2024], archived at <https://perma.cc/3PXF-UK5V>.

[18]  Kaiser Family Foundation/The Washington Post, KFF/The Washington Post Trans Survey (2022), page 3 <https://files.kff.org/attachment/REPORT-KFF-The-Washington-Post-Trans-Survey.pdf> [as of Oct. 29, 2024], archived at <https://perma.cc/A229-8XXN>.

[19]  Community Relations Service, United States Department of Justice, 2022 FBI Hate Crime Statistics <https://www.justice.gov/crs/highlights/2022-hate-crime-statistics> [as of Oct. 29, 2024], archived at <https://perma.cc/DA2W-P23E>.

[20]  California Department of Justice, 2022 Hate Crime in California, page 2 <https://oag.ca.gov/system/files/attachments/press-docs/Hate%20Crime%20In%20CA%202022f.pdf> [as of Oct. 29, 2024], archived at <https://perma.cc/W9YV-MHP7>.  We grant appellant's request to take judicial notice of both the 2021 Hate Crime in California report <https://oag.ca.gov/system/files/attachments/press-docs/Hate%20Crime%20ln%20CA%202021%20FINAL.pdf> [as of Oct. 29, 2024], archived at <https://perma.cc/DKE4-V93D> and the 2022 Hate Crime in California report.  (Evid. Code, § 452, subd. (c).)

confidentiality in transgender adults' name change or gender marker correction records. The Legislature though recently enacted the Transgender Youth Privacy Act (Assem. Bill No. 223 (2023–2024 Reg. Sess.) (Assembly Bill 223) to mandate confidentiality for transgender minors' records.  Effective January 1, 2024, a minor's petition for a name change and gender identifier must be kept confidential by the court.  (Health & Saf. Code, § 103437, added by Stats. 2023, ch. 221, § 1.)[21]  The bill acknowledged the statute "places a limitation on the public's right of access to public records," but gave the following justification:  "It is in the best interest for the public to keep these records confidential to ensure the privacy and safety of transgender and nonbinary youth. Transgender and nonbinary youth are 2 to 2.5 times as likely to experience depressive symptoms, seriously consider suicide, and attempt suicide compared to their cisgender LGBQ peers.  Being outed is a traumatic event for any individual, especially for individuals under 18 years of age.  Allowing our children to choose when and how they decide to share their personal details is vital in protecting their mental and physical health."  (Sen. Com. on Judiciary, Analysis of Assem. Bill No. 223 (2023–2024 Reg. Sess.) June 13, 2023, pp. 6–7.)

Prior to Assembly Bill 223, the Legislature enacted the Gender Recognition Act (the Act) (Senate Bill No. 179 (2017–2018 Reg. Sess.) (Senate Bill 179) to "improve the procedures for transgender, intersex, and nonbinary individuals to change their name and/or gender to conform with their gender identity in several identity documents, including birth certificate and driver's license or state identification card."  (Assem. Com. on Judiciary, Analysis of Sen. Bill No. 179 (2017–2018 Reg. Sess.) as amended June 22,

---

[21]     Appellant concedes the Transgender Youth Privacy Act does not apply to her, but cites the Transgender Youth Privacy Act to "show the evolving nature of the law regarding sealing of court records in name and gender marker correction cases."

2017, p. 1, italics omitted.)[22]  The Legislature found that "transgender, intersex, and nonbinary individuals experience significant hardships in their everyday lives.  Many of these hardships arise from verbal harassment, denial of benefits or services, or assault as a result of showing identification that does not match the individual's gender presentation.  In order to ensure that transgender, intersex, and nonbinary individuals are able to live safe, full, and authentic lives, it is essential that transgender and nonbinary people have access to identity documents, such as photo identification and birth certificates, that accurately reflect their current name, gender identity, and gender expression."  (*Ibid.*, italics omitted.)  Among the changes, the Act exempted from publication the proceeding to change the petitioner's name to conform with the petitioner's gender identity (§ 1277.5, subd. (b)) and eliminated the requirement of submitting a physician's affidavit attesting that the petitioner has undergone clinically appropriate treatment for the purpose of gender transition.

The legislative histories of Assembly Bill 223 and Senate Bill 179 show the Legislature's awareness of discrimination against both transgender adults and minors, and the importance of obtaining identification documents congruent with their gender identity.  The Legislature has found transgender minors are particularly vulnerable if "outed" and sought to protect those minors by mandating confidentiality in their name change and gender correction records.  (Legis. Counsel's Dig., Assem. Bill No. 223 (2023–2024 Reg. Sess.) Stats. 2023, ch. 221, § 2.)  While appellant has a privacy interest in records that reveal her transgender identity, whether the same compulsory confidentiality should apply to the records of *all* transgender adults remains for the Legislature to decide.  We therefore agree with the trial court that unless and until the Legislature does so, the court must address on a case-by-case basis whether a transgender

---

**22**     While the Act became effective after appellant's petition for change of name and gender was granted, the Legislature's findings are relevant to the issues here.

adult has met the requirements for sealing such records under rule 2.550(d).

### B.  *Whether Substantial Evidence Supports the Trial Court's Findings*[23]

The trial court's order partially denying appellant's application to seal left the following records unsealed:  appellant's petition for change of name and gender, the decree changing name and gender, and the minute order of the hearing on appellant's petition for change of name and gender.

In her application to seal, appellant cited studies showing transgender people are subject to violence, harassment, and discrimination.  But she did not solely rely on discrimination or harassment generally against transgender people; she presented evidence of harassment specifically directed against her.  This included an anonymous offensive social media post revealing her transgender identity with appellant's identifying information as well as the name of the doctor who signed the affidavit supporting her petition.  Appellant also submitted documentation of anonymous transphobic messages sent to her.  The trial court found appellant reasonably believed someone located her public court records, but then found it could not conclude based on the evidence that her transgender status was discovered by review of the court's records.  After her petition was granted, appellant kept her transgender identity private and had not disclosed her former name unless required to do so by law.  It is unclear how appellant can conceivably produce evidence the anonymous poster and messengers learned of her transgender identity through the court records when the perpetrators' identities are unknown.  Furthermore, the details in the post and messages, especially the name of appellant's doctor, evince more than a mere possibility the public availability of appellant's records

---

**23**　　While whether a transgender person has a privacy interest in their transgender identity is a question of law reviewed de novo, the trial court's order denying sealing is reviewed for substantial evidence as previously discussed.

revealed her transgender identity to her persecutors. The court's finding otherwise is unsupported by the evidence.[24]

Nor does substantial evidence support the trial court's finding further harassment is not likely. Appellant has already been a target of harassment by unknown people who may do so again under their craven cloak of anonymity. Eliminating entirely the risk of further harassment is impossible, but sealing or redacting her records undoubtedly hinders the ability of predators to discover appellant's transgender identity. The evidence appellant has already endured transphobic harassment demonstrates a substantial probability her privacy and safety interests will be prejudiced if her records remain unsealed.

Citing *Useldinger*, the trial court noted California's liberal name change policy carries with it a strong presumption of those name changes being public, otherwise name changes would make it more difficult for creditors or others with legitimate reasons to locate those who have changed their name. At common law, a "person may refer to themselves by any name they like [citation], and may do so without the need for any legal proceeding." (*Wood v. Superior Court* (2024) 100 Cal.App.5th 717, 722.) The statutory procedure to change names in section 1275 et seq. "was enacted 'in affirmation of [the] common law right and for the purpose of providing for the establishment of a change of name as a matter of public record.'" (*Wood, supra*, at p. 722; see *Weathers v. Superior Court* (1976) 54 Cal.App.3d 286, 288 [the "statutory procedure for change of name … is designed merely to provide a public record of the change"].) The public has an interest in name changes to protect against those who seek to conceal their identity for fraudulent

---

[24]    Because appellant made a sufficient showing of the need to seal her records due to harassment specifically targeted against her, we have no occasion to address whether a showing of harassment or discrimination against transgender people generally would support sealing court records under rule 2.550(d).

22.

purposes, or to avoid criminal prosecution or creditors. Public record of name changes permit those with a legitimate interest in learning of the change to identify a person.

The trial court sealed appellant's application to seal and accompanying exhibits because the court found there was unlikely any public interest in the records showing abusive statements and pictures directed at appellant. Insufficient evidence supports the implied and related finding there *is* a public interest in all the records the court left unsealed.[25] Nothing in the record shows appellant changed her name or corrected her gender marker for fraudulent purposes, or to evade creditors or criminal prosecution. On the contrary, the record reflects appellant did so based upon a genuine desire to live in conformity with her gender identity. Appellant's overriding privacy and safety interests in concealing her transgender identity overcome the public's presumed right of access. (See *Overstock, supra*, 231 Cal.App.4th at p. 504 [whether a state-recognized privacy interest overcomes the federal constitutional right of access to court records is necessarily a balancing inquiry depending on the facts and circumstances of the particular case].)

Because the trial court's findings are not supported by substantial evidence, the order denying sealing must be reversed.

## IV. *Narrowly Tailoring the Sealing Order*

While appellant has shown her overriding privacy and safety interests support sealing her records, the sealing order must be "narrowly tailored to serve [those] overriding interest[s]." (*NBC Subsidiary, supra*, 20 Cal.4th at p. 1218; accord, rule 2.550(d)(4).) A "reasoned decision about sealing or unsealing records cannot be

---

[25] Appellant argues the trial court erred by failing to engage in any analysis of the standards set forth in rule 2.550(d). To the extent appellant is arguing the court must make express findings addressing the rule 2.550(d) factors in denying her motion to seal, we disagree. "While express findings must be made to seal records, no express finding need be made when a court unseals records" or the equivalent denial of a motion to seal. (*Tamir, supra*, 72 Cal.App.5th at p. 1087; accord, *Overstock, supra*, 231 Cal.App.4th at pp. 487–488.) A court must consider the same criteria in rule 2.550(d) when denying a motion to seal, but its findings may be implied rather than express. (*Overstock, supra*, at p. 488; *Providian, supra*, 96 Cal.App.4th at p. 302.)

made without identifying and weighing the competing interests and concerns." (*H.B. Fuller, supra*, 151 Cal.App.4th at p. 894.) Determining which records must be sealed entails not only identifying the specific information entitled to confidentiality and the nature of the harm threatened by disclosure, but also "identifying and accounting for countervailing considerations." (*Ibid.*)

Given the strong presumption name change records be public, we endeavored to find a way to narrowly seal appellant's records to protect her privacy interest in her transgender identity, but still retain a public record of her name change. Doing so proved elusive, however, due to the information in and nature of the few records left unsealed. Appellant's initial petition requested a change of her name and gender marker using the required Judicial Council form to change both simultaneously. The trial court's decree and minute order reflecting that petition was granted show both her name and gender marker were changed. The court's order denying the application to seal impliedly discloses appellant's transgender identity. Essentially, the unsealed records documenting appellant's name change also necessarily reveal her gender marker correction.

With respect to appellant's safety interest in concealing her records, the Legislature has recognized circumstances other than those identified in Assembly Bill 223 in which the petitioner's safety interest in keeping their name change confidential overrides the public's presumed right of access. The court must keep a proposed name change confidential if the petitioner is a participant in California's "Safe at Home" address confidentiality program (Gov. Code, § 6205 et seq.)[26] and seeking a name change

---

[26] California's address confidentiality program was originally established in 1998 to protect victims of domestic violence and has since expanded to include victims of sexual assault, stalking, human trafficking, child abduction, and elder abuse, as well as election workers and reproductive health care workers. (Stats. 1998, ch. 1005, § 1; Sen. Rules Com., Off. of Sen. Floor Analyses of Sen. Bill No. 1131 (2021–2022 Reg. Sess.) as amended Aug. 15, 2022, pp. 5, 6; Gov. Code, §§ 6205–6210, 6215–6216; Elec. Code, § 2166.8.) In creating and expanding the program, the Legislature found that "persons attempting to escape from actual or threatened domestic violence, sexual assault, stalking, human trafficking, child abduction, or elder or

24.

to avoid domestic violence, stalking, sexual assault, or human trafficking. (Code Civ. Proc., § 1277, subd. (b); rule 2.575(c), (e); see Gov. Code, § 6206.4 [the Secretary of State shall keep confidential name changes of program participants].) Under section 1277, subdivision (b)(5), a petitioner in the address confidentiality program "may request that the court file the [name change] petition and any other papers associated with the proceeding under seal." Under this statutory subdivision, the court must find all the same factors of rule 2.550(d) apply in determining whether to grant a request that a name change petition proceed under seal. (§ 1277, subd. (b)(5)(A)–(E).)

Appellant's interests, though not derived from the same circumstances, are analogous to those of petitioners in the address confidentiality program. Appellant similarly seeks to keep her name change confidential to protect herself from past or potential anti-transgender harassers. (See e.g., Gov. Code, § 6215.2, subd. (h)(1) ["'[h]arassment'" for purposes of the address confidentiality program "is repeated, unreasonable, and unwelcome conduct directed at a targeted individual that would cause a reasonable person to fear for their own safety"].) Because appellant has made the same showing under rule 2.550(d) required of a petitioner in the address confidentiality program, her records deserve no less protection.

The circumstances here present the presumably rare case in which "narrowly" tailoring a sealing order mandate sealing the entire record of appellant's name change and gender marker correction. The record reveals no less restrictive alternative to achieve appellant's overriding privacy and safety interests.[27]

Given her records must be sealed in their entirety, we considered an alternative way to maintain a public record of appellant's name change without disclosing her

---

dependent adult abuse frequently establish new names or addresses to prevent their assailants or probable assailants from finding them." (Gov. Code, § 6205, subd. (a).)

[27] The entire unsealed record prior to the challenged order is admittedly fairly sparse, consisting of less than 15 pages.

gender marker correction.  To that end, we requested supplemental briefing from appellant on whether her privacy and safety interests would be sufficiently protected if the trial court's entire record was ordered sealed, but the trial court issued a public decree identifying:  (1) the trial court case name, (2) the trial court case number, (3) appellant's prior legal name in its entirety, and (4) the fact that name change was granted in 2018 but not disclosing appellant's new name.

In her responsive brief, appellant argues this alternative would not sufficiently protect her privacy and safety interests because the proposed public decree would maintain a link between her prior name and this appeal, which publicly identifies her as transgender.  Appellant asserts that while she filed a redacted opening brief, the redacted brief still identifies her as a transgender woman who received a name and gender marker correction from the trial court in 2018.  Appellant reports that although she has not associated with her prior name since she was a minor, the name remains a personal identifier and will always be linked to her Social Security number and Department of Motor Vehicle records.  If a public decree was issued that identified appellant's prior name and linked to her opening brief through the trial court case number, appellant contends the decree would defeat the purpose of the sealing order by revealing that her name change was for the purpose of aligning with her gender identity.

Appellant's last point is well taken.  Like the *Jackson* court, we "do not take lightly the public's right of access to court proceedings and the interests served by public access" (*Jackson, supra*, 128 Cal.App.4th at p. 1028), but we have already concluded the record shows no specific, identifiable public interest in appellant's name change and her records must be sealed in their entirety.  The proposed public decree may indirectly reveal what the sealing order would conceal.  Without "a showing of specific utility of public access to" appellant's name change, the decree may also serve as a solution in

26.

search of a problem. (*Mercury, supra*, 158 Cal.App.4th at p. 105.)[28]  Appellant's continued use of the same Social Security number associated with her former name provides a method for creditors to identify her despite her name change. (See e.g., 15 U.S.C. 1681c-1(j)(1)(G) [a consumer may be identified by their Social Security number under the federal Fair Credit Reporting Act (15 U.S.C. § 1681 et seq.)].)  The sealing order mandated for appellant's unsealed records is also "a way station, not a final destination." (*In re Marriage of Nicholas, supra*, 186 Cal.App.4th at p. 1576.)  "Sealing orders, by their nature, turn on particular circumstances, which may change or evolve over time" and any sealing order remains subject to ongoing judicial scrutiny. (*Id*. at p. 1569.)  "[*A*]*ny* person, not just litigants, can move, apply, or petition to unseal any court record." (*Id.* at p. 1577; accord, rule 2.551(h)(2).)  Accordingly, any person with a legitimate interest in appellant's records may ask the trial court to unseal her records and the court may do so after considering the required factors. (Rule 2.551(h)(4) ["the court must consider the matters addressed in rule 2.550(c)–(e)" in determining whether to unseal a record].)

Therefore, on remand, the trial court shall seal all court records that reveal appellant's name change or gender marker correction.

---

[28]    We acknowledge there is no respondent in this matter and, consequently, no party before us asserting a specific utility of public access to appellant's records.  Our disposition does not foreclose the possibility such a showing could be made.

## DISPOSITION

The order denying sealing is reversed, and the matter is remanded for further proceedings consistent with this opinion.

MEEHAN, J.

WE CONCUR:

FRANSON, Acting P. J.

SNAUFFER, J.